2003 VT 83

## State of Vermont v. Patrick Simoneau

[833 A.2d 1280]

No. 01-007

Present: Amestoy, C.J., Dooley, Morse,[1] Johnson and Skoglund, JJ.

Opinion Filed August 29, 2003
Motion to Alter or Amend Denied October 6, 2003

---

[1] Justice Morse sat for oral argument but did not participate in this decision.

16

*Lauren Bowerman,* Chittenden County State's Attorney, and *Pamela Hall Johnson,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee State of Vermont.

*William H. Sorrell,* Attorney General, and *John Treadwell,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee Vermont Criminal Justice Training Council.

*Mark E. Furlan* of *Abatiell Associates, P.C.,* Rutland, for Defendant-Appellant.

*Kevin J. Coyle* and *Joseph A. Farnham* of *McNeil, Leddy & Sheahan,* Burlington, for Intervenor-Appellee Burlington Police Department.

*Aileen L. Lachs* of *Mickenberg, Dunn, Kochman, Lachs & Smith,* Burlington, for Intervenor-Appellee Burlington Police Officers' Association.

¶ 1. **Dooley, J.** In this consolidated appeal, defendant Patrick Simoneau challenges the civil suspension of his motor vehicle license and the judgment entered on his conditional guilty plea to driving under the influence, fourth offense. The parties reserved the following issues for appeal: (1) did the trial court err in denying the initial defense motion to suppress and dismiss for lack of probable cause; (2) did the trial court err in denying defendant's motion to reopen his motion to suppress and

18

dismiss based upon newly discovered evidence; and (3) did the trial court err in denying the defense access to training records of the charging officer as part of discovery?[2] We affirm.

¶ 2. On September 10, 2000, defendant was arrested for suspicion of driving under the influence. He was charged with driving under the influence, fourth offense, and the State also initiated civil suspension proceedings against him. After being arraigned, defendant moved to suppress the evidence against him and to dismiss the civil suspension proceedings, arguing that the officers lacked probable cause to arrest him. The trial court held a combined criminal and civil hearing on these motions on December 6, 2000.

¶ 3. At the hearing, Burlington Police Officer Daniel Merchand testified that on September 10, 2000, he and Officer Timothy Ahonen were sent to investigate an altercation at a Burlington residence. Upon arriving, the officers spoke with Allen Bouchard who had a cut lip and was intoxicated. Mr. Bouchard told Officer Merchand that he had been hanging out and drinking with friends and had gotten into a scuffle with "Patrick." While talking with Mr. Bouchard, Officer Merchand observed a man wearing plaid shorts and a light colored shirt exit through the back door of the residence. The officers were unable to locate "Patrick" and, finding Mr. Bouchard uncooperative, they departed.

¶ 4. While walking to their patrol cars, the officers observed a vehicle without its headlights on, backing into a parking space. Officer Merchand saw the driver, who was wearing a light colored shirt and plaid shorts, exit the vehicle and begin to walk unsteadily towards the residence where the altercation had taken place. Officer Merchand yelled "Patrick," and the individual looked toward him. When defendant was less than twenty-five feet from the back door of the apartment, Officer Ahonen attempted to stop him from reentering the building. When defendant resisted Officer Ahonen's actions, he was placed in handcuffs to allow the officers to "figure out what was going on."

¶ 5. While defendant was detained, Officer Merchand observed his watery, bloodshot eyes and detected a moderate odor of alcohol on his breath. Officer Merchand then advised defendant that he was under arrest for suspicion of driving under the influence.

¶ 6. Defense witness Kim Jarvis also testified at the hearing. She stated that she lived at the residence where the altercation occurred and

[2] The parties also reserved the following question for appeal: did the trial court err in failing to reopen the civil suspension matter based on fraud and newly discovered evidence? Appellant has not briefed this question, however, and we treat it as abandoned and do not consider it.

had been present when the officers arrived. She observed the officers handcuffing defendant and stated that she had seen defendant driving shortly before his arrest.

¶ 7. At the close of the hearing, the court granted judgment for the State in the civil proceeding and denied defendant's motion to suppress. The court found that Officer Merchand had reasonable grounds to believe that defendant was operating a motor vehicle under the influence of intoxicating liquor and that his arrest was supported by probable cause. The court based its conclusions on Officer Merchand's testimony and found Ms. Jarvis's testimony consistent with Officer Merchand's observations. The court made the following factual findings: (1) Mr. Bouchard indicated to Officer Merchand that he had been drinking with defendant that night; (2) Officer Merchand observed defendant back his vehicle into the parking space; (3) Officer Merchand noticed defendant's "unsteady gait"; and (4) Officer Merchand yelled at defendant and got a response, which helped confirm his suspicion that this was indeed Patrick.

¶ 8. In January 2001, defendant filed notice that he was appealing the civil suspension decision. He then retained new counsel. In May 2001, defendant filed a "Renewed Motion to Suppress and Dismiss" in the criminal proceeding, and asked the court to reconvene a hearing based on new evidence. The new evidence consisted of testimony of Lisa Page, who was present the night of the incident but did not testify at the original suppression hearing; Allen Bouchard, who also did not testify at the suppression hearing; Kim Jarvis; and Guy Paradee, private investigator. The main thrust of the proffered testimony was that the officers could not have seen defendant operate a vehicle. Defendant moved to reopen the civil suspension proceeding on the same basis.

¶ 9. In May 2001, defendant served a subpoena on the Record Keeper at the Vermont Criminal Justice Training Council (Council). The Council runs the State Police Academy that Officer Merchand attended for training at the start of his service as a police officer. The subpoena requested that the Record Keeper attend a deposition and produce all records regarding Officer Merchand, including reports related to his training. The Council moved to quash the subpoena. In response, defendant asserted that the records would show that Officer Merchand had been dismissed from the Police Academy for lying and violation of the rules, and defendant wanted to use this information to impeach Officer Merchand when he testified.

¶ 10. In June 2001, after a hearing and in camera inspection of the pertinent Council records, the court granted the Council's motion to quash. The court rejected the State's assertion that the Vermont Access

to Public Records statute barred disclosure of the records, but concluded that there was "no legitimate manner" in which defendant could use the records at a hearing or at trial. The court noted that defendant was seeking the Council's records for potential impeachment purposes, rather than exculpatory use. The court concluded that the documents contained information that was "collateral at best," and even assuming that the court would allow such an inquiry at trial, defendant could not use the records to impeach Officer Merchand under Rule 608(b) of the Vermont Rules of Evidence. At the hearing, the court also received Officer Ahonen's deposition testimony into evidence, without objection, and indicated that it would consider this testimony as evidence when considering defendant's motion to renew.

¶ 11. In July 2001, the court denied defendant's renewed motion to suppress and dismiss and his motion to reopen the civil proceeding. The court considered the deposition testimony of Officer Ahonen in reaching its conclusion and used its order to explain in greater detail the reasons supporting its *initial* denial of defendant's motion, including setting out findings of fact.

¶ 12. In August 2001, defendant entered a conditional guilty plea to driving under the influence, fourth offense, reserving four issues for appeal. We granted his motion to consolidate his civil and criminal appeals, and this appeal followed.

¶ 13. We first address defendant's claim that the trial court erred in denying his initial motion to suppress. Defendant argues that the court's essential findings of fact are not supported by the record and therefore its conclusion that the officers were warranted in conducting an investigatory stop is erroneous. Additionally, defendant maintains that the officers' use of physical force transformed the investigatory stop into an arrest for which the officers lacked probable cause.

¶ 14. Resolution of a motion to suppress involves a mixed question of fact and law. We must accept the trial court's findings of fact unless they are clearly erroneous. See *State v. Lawrence*, 2003 VT 68, ¶¶ 8-9, 175 Vt. 600, 834 A.2d 10 (mem.). The question of whether the facts as found met the proper standard to justify a stop is one of law. *Id.* A police officer is authorized to make an investigatory stop based on a reasonable and articulable suspicion of criminal activity. See *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *State v. Chapman*, 173 Vt. 400, 402, 800 A.2d 446, 449 (2002). The officer must have more than an unparticularized suspicion or hunch of criminal activity, but needs considerably less than proof of wrongdoing by a preponderance of the evidence. See *State v. Welch*, 162 Vt. 635, 636, 650 A.2d 516, 517 (1994) (mem.); *State v. Kindle,*

170 Vt. 296, 298, 751 A.2d 757, 758 (2000). An officer may briefly detain a suspect to investigate the circumstances that provoke his suspicion as long as the scope of the detention is reasonably related to the justification for the stop and inquiry. *Chapman*, 173 Vt. at 402, 800 A.2d at 449.

¶ 15. Defendant attacks a number of the court's findings of fact as unsupported by the evidence, particularly the findings that Mr. Bouchard told Officer Merchand that defendant had been drinking with him that night and that defendant's response to Officer Merchand's calling out his name indicated that he was Patrick. We have reviewed Officer Merchand's testimony and conclude that the court's findings are adequately supported by that testimony and inferences legitimately drawn from that testimony.

¶ 16. The findings support the trial court's conclusion that Officer Merchand had a reasonable and articulable suspicion that defendant was driving under the influence. Officer Merchand testified that Mr. Bouchard, who was clearly intoxicated, told him that he had been drinking with friends, including "Patrick," and that he and Patrick had engaged in a scuffle. Officer Merchand stated that he saw someone wearing a light colored shirt and plaid shorts exit through the back door of the apartment while he was interviewing Mr. Bouchard. Shortly thereafter, the officer observed someone operating a car with its headlights off. Officer Merchand observed the driver, who was wearing a light colored shirt and plaid shorts, walking unsteadily toward the apartment where the altercation had occurred. At this point, Officer Merchand called out "Patrick," and defendant responded. These facts provide the basis for a reasonable and articulable suspicion that defendant was driving under the influence.[3] Therefore, the trial court correctly concluded that the officers' detention of defendant was warranted.

¶ 17. Based on our conclusion, we need not address defendant's argument that the officers were not justified in detaining him under the community caretaking exception to the probable cause requirement. The officers had a reasonable and articulable suspicion sufficient to warrant an investigatory stop; they did not need probable cause.

¶ 18. Similarly, we reject defendant's argument that the use of handcuffs transformed the investigatory stop into an arrest for which the

---

[3] In connection with defendant's motion to reopen and renewed motion to suppress, the court received and considered a transcript of a deposition of Officer Ahonen, the other officer on the scene. Defendant argues that it would be improper for us to consider this deposition because it was not before the district court when it initially ruled on the motion to suppress. We have not relied upon the deposition in reaching our decision on the motion to suppress.

officers lacked probable cause. We have stated that whether a seizure is an arrest or merely an investigatory detention depends on the reasonableness of the intrusion under the totality of the circumstances. *Chapman*, 173 Vt. at 403, 800 A.2d at 449. In assessing whether the degree of restraint is too intrusive to be classified as an investigatory detention, courts have considered a number of factors, including the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained. *Id.*

¶ 19. In this case, the officers' act of placing defendant in handcuffs was reasonable under the circumstances. The officers observed defendant driving without his headlights on and suspected that he had been drinking. The officers also suspected that defendant, whom Officer Merchand had observed leaving the residence earlier, had assaulted Mr. Bouchard. The officers watched defendant walking towards the residence where the altercation had occurred and where Mr. Bouchard was present. Defendant did not stop when accosted by the officer. When Officer Ahonen attempted to grab defendant's arm, defendant "pulled away from him." The officers then detained defendant briefly to allow them to assess the situation. The officers quickly gained probable cause and arrested defendant for suspicion of driving under the influence. Under these circumstances, the use of handcuffs did not transform the investigatory stop into an arrest, and the trial court properly denied defendant's initial motion to suppress.

¶ 20. Defendant next contends that the trial court erred in denying him access to Officer Merchand's training records as part of discovery. Specifically, defendant argues that the court's decision to quash his subpoena compromised his ability to defend himself because he could not effectively challenge Officer Merchand's credibility. Defendant also maintains that the Access to Public Records Act, 1 V.S.A. §§ 315-320, mandates disclosure of the records.

¶ 21. We review the trial court's decision to quash a subpoena for abuse of discretion. See *State v. Findlay*, 171 Vt. 594, 595, 765 A.2d 483, 486 (2000) (mem.) ("The trial court's resolution of evidentiary issues is discretionary, and we will not reverse them absent an abuse of discretion."); *United States v. Nixon*, 418 U.S. 683, 702 (1974) (enforcement of pretrial subpoena duces tecum committed to sound discretion of trial court). To demonstrate an abuse of discretion, defendant must show that the trial court either withheld its discretion or exercised it on clearly unreasonable or untenable grounds. *State v. White*, 172 Vt. 493, 500, 782 A.2d 1187, 1192 (2001). We " 'will not interfere with discretionary rulings of the trial court that have a reasonable basis, even if another court might

have reached a different conclusion,' nor will we interfere with the judgment of the trial court simply because a different court might have reached a different conclusion." *Id.* (quoting *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988)).

¶ 22. In his subpoena, defendant sought to compel the Council's Record Keeper to attend a deposition and produce "all records regarding Officer Daniel Merchand, including all reports related to his training." In response to the State's motion to quash, defendant detailed what he expected the records to contain, based on the report of an investigator who interviewed employees of the Council. The trial court quashed the subpoena after a hearing and after reviewing the requested documents, concluding that there was "no legitimate manner" in which defendant could use them at a hearing or at trial. As discussed below, although we cannot uphold the trial court's decision based on its reasons for its action, we affirm the decision on other grounds.

¶ 23. Rule 17 of the Vermont Rules of Criminal Procedure governs the issuance of subpoenas in criminal cases. Rule 17(a) allows a party to subpoena a witness "to attend and give testimony" at a designated time and place. Rule 17(c) governs the production of documents, and it provides, in relevant part:

> A subpoena may also command the witness to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents, or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, or objects or portions thereof to be inspected by the parties and their attorneys.

¶ 24. The State — joined by the Council, the Burlington Police Department and the Burlington Police Officers' Association — argues that Rule 17(c) allows a subpoena to seek only *admissible* evidence, which generally does not include information sought solely for impeachment purposes. Their argument is based on the federal courts' interpretation of F.R.Cr.P. 17(c), from which the Vermont rule is taken. See *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951); *Nixon*, 418 U.S. at 700 (moving party must satisfy three criteria to be entitled to pretrial production of documents: relevancy, *admissibility*, and specificity); *id.* at

701 (need for evidence to impeach witnesses generally insufficient to require its production in advance of trial); *United States v. Cherry*, 876 F. Supp. 547, 552-53 (S.D.N.Y. 1995) (same) (collecting cases).

¶ 25. The State argues that the information gained through the subpoena could never be admissible because of the restriction in V.R.E. 608 on the use of extrinsic evidence to impeach a witness's credibility. Although the rule does not define "extrinsic evidence," we have found it to include documentary evidence offered during the cross-examination of a witness whose character is being challenged. See, e.g., *State v. Washington*, 164 Vt. 609, 611, 669 A.2d 550, 552 (1995) (mem.) (court properly excluded photograph of murder trial witness with gun and drugs as extrinsic evidence); *State v. Leggett*, 164 Vt. 599, 600, 664 A.2d 271, 272 (1995) (mem.) (police report in which rape victim claimed she was molested by another man would not be admissible to impeach witness because it was extrinsic evidence). Of course, evidence of specific instances of conduct offered to attack a witness's credibility is not admissible through other witnesses as a matter of law. See *John A. Russell Corp. v. Bohlig*, 170 Vt. 12, 22, 739 A.2d 1212, 1220 (1999).[4]

¶ 26. As noted at the beginning of this opinion, the trial court quashed the subpoena based on the State's argument. The court's conclusion was as follows:

> In this proceeding, evidence of the Officer's conduct at the Police Academy would be collateral at best. Assuming, for purposes of discussion, that the Court permits inquiry about the same, the Defendant would not, under Rule 608(b), be permitted to impeach the Officer's testimony by use of Training Council records either through cross-examination of the Officer or direct examination of another witness.

Although the trial court did not say so explicitly, it necessarily agreed that the records could not be subpoenaed unless they were shown to be admissible in evidence. We disagree with that rationale.

---

[4] We do not address whether if, on cross-examination, Officer Merchand denied all or part of the information contained in the Council record, defendant could have had the record admitted as impeachment by contradiction. Courts have held that impeachment by contradiction is not governed by Rule 608. See 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 608.20[3][a] (2d ed. 2003). We note that cases decided prior to the adoption of the Vermont Rules of Evidence prohibit the introduction of extrinsic evidence to show that a witness's testimony was false if the testimony related to a collateral matter. See *State v. Teitle*, 117 Vt. 190, 195, 90 A.2d 562, 566 (1952). In granting the motion to quash, the trial court described the evidence subpoenaed as "collateral at best."

¶ 27. The weakness in the State's argument and the trial court's decision is that they take federal law out of context and apply it to the dissimilar Vermont discovery law. V.R.Cr.P. 17(c) is based on Rule 17(c) of the Federal Rules of Criminal Procedure. Neither rule states that it may be used only to obtain evidence shown to be admissible. Such a limitation is logical for the federal courts, however, because the federal rules allow only very limited criminal discovery and allow criminal depositions only to preserve testimony. See F.R.Cr.P. 15(a) (court may grant party's motion to depose prospective witness "to preserve testimony for trial" where required by "exceptional circumstances and in the interest of justice"). In establishing the admissibility requirement, the United States Supreme Court stated: "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co.*, 341 U.S. at 220.

¶ 28. The limitation is not logical in Vermont. Unlike the federal rules, Vermont rules allow parties broad authority to depose witnesses in criminal cases for discovery purposes. See V.R.Cr.P. 15(a) (defendant or State "may take the deposition of a witness subject to such protective orders and deposition schedule as the court may impose"). The use of the subpoena duces tecum for discovery purposes is explained in the Reporter's Notes to Rule 17(c):

> Rule 17(c) functions as a discovery device because it permits the court to order production of materials for inspection at a time prior to trial or hearing. A party seeking such production may move specially for it or may simply make the subpoena returnable prior to trial, leaving it to the producing party to move to quash or modify the subpoena. Production prior to trial or hearing is discretionary and will be denied unless the party seeking it meets a burden of showing the evidentiary character and relevance of the material, its unavailability by other means, and its necessity for his trial preparation.

Reporter's Notes, V.R.Cr.P. 17 (citing 1 C. Wright, Federal Practice and Procedure § 274 (1st ed. 1969)); see *State v. Percy*, 149 Vt. 623, 635-36, 548 A.2d 408, 414-15 (1988). The rule allows the trial judge to quash the subpoena "if compliance would be unreasonable or oppressive." V.R.Cr.P. 17(c). The Reporter's Notes make clear that the production decision is discretionary and that judges must consider whether a request is reasonable and not oppressive.

¶ 29. The power to subpoena information used for trial preparation, even if not itself admissible in the criminal case, is consistent with the

deposition rule, V.R.Cr.P. 15. As we explained in *State v. Barrows*, 158 Vt. 445, 450, 614 A.2d 377, 380 (1992), Rule 15 "sets forth procedures for the taking of depositions," but it "does not define the limits of discovery." The Reporter's Notes, however, amplify the intent behind the rule to grant as broad discovery rights as formerly authorized by statute. See Reporter's Notes, V.R.Cr.P. 15 (The "test of relevance should be construed as broadly as the former statute, so as not to inhibit the discovery purpose of the rule."). As it existed at the time, 13 V.S.A. § 6721 gave a defendant the right to take the deposition of a witness on a showing that the "testimony may be material or relevant on the trial or of assistance in the preparation of his defense." 1961, No. 147, § 1 as amended by 1965, No. 194, § 10. Undoubtedly, the standard was quite broad. See *State v. Mahoney*, 122 Vt. 456, 459, 176 A.2d 747, 749 (1961).

¶ 30. We conclude that the records sought in this case fit within those that would ordinarily be allowed by Rules 15 and 17(c). Based on independent investigation, defendant alleged that the records would show conduct adversely bearing on Officer Merchand's character for truthfulness. The records would enable defense counsel to accurately cross-examine Officer Merchand about the conduct. We cannot uphold the decision to quash the subpoena based on the ground argued by the State and intervenors. Although the decision to quash the subpoena was discretionary, there is no indication that the trial court exercised its discretion.

¶ 31. Nevertheless, we affirm the decision of the trial judge to quash the subpoena. The subpoena was inextricably intertwined with defendant's motion to renew his motion to suppress. Defense counsel's attack on the credibility of Officer Merchand related to his testimony describing his justification for accosting and detaining defendant. The court refused to allow defendant to reopen the civil suspension judgment or renew the motion to suppress, a decision we uphold in the next section of this opinion. The court reviewed the records defendant seeks and was aware of them when it denied the motions to reopen and renew. Given the court's rationale for denying the motions, it is clear that the consideration of the records would not have changed the result.

¶ 32. We recognize that the State would be required to prove the elements of the offense at trial, and one of those elements is the operation of a vehicle. We also recognize that defendant particularly challenges Officer Merchand's claim that he observed defendant operating his vehicle shortly before he was detained. We note, however, that three witnesses — the two investigating officers and a defense witness — gave

statements saying they observed defendant operating his vehicle. Defendant has not suggested that he has any evidence to the contrary. Denial of the minimal benefit he might obtain from cross-examining Officer Merchand on his Police Academy record is harmless beyond a reasonable doubt.

¶ 33. Finally, the main rationale for the court's decision to deny the motion to reopen was that the new evidence defendant sought to present was not newly discovered. All the witnesses were known to defendant from the beginning of the case, and defendant should have conducted his investigation much earlier. The same rationale applies to the subpoena and deposition for which it was issued. Discovery depositions are to be completed within ninety days after arraignment, unless the court sets a later date or unless the court orders otherwise "for good cause shown." V.R.Cr.P. 15(a). Defendant was arraigned in September 2000, and the court did not set a later date for the conclusion of depositions. Defendant did not subpoena the Record Keeper to the discovery deposition until May 2001. Defendant gave no justification for his tardiness except that he had changed counsel and his new counsel had hired a private investigator. To the extent defendant attempted to show good cause, his justification was tied to his central position that Officer Merchand was untruthful in his claim that he saw defendant operate his vehicle, a position the trial court rejected.

¶ 34. For the above reasons, we conclude that the court's decision to quash the subpoena was harmless and did not affect defendant's substantial rights. See V.R.Cr.P. 52(a).

¶ 35. Finally, defendant contends that the court erred in denying his motion to renew his initial motion to suppress and dismiss. His motion to renew was based on newly discovered evidence that defendant argued "made it readily apparent that there was serious question about the truthfulness of the testimony of BPD Officer Merchand given the physical layout of the alleged crime scene." In his motion, defendant summarized the testimony of four witnesses, including Allen Bouchard, Kim Jarvis, who supplied additional testimony to her earlier testimony at the civil suspension hearing, and an accident reconstruction expert who opined that the officers could not have seen defendant operating his vehicle.

¶ 36. In ruling on the motion, the trial court had the original evidence presented at the hearing on December 6, 2000, the deposition of Officer Ahonen and defendant's offer of proof of the "newly discovered" witnesses. The trial court issued a written decision denying the motion for the following reasons:

First, the evidence proffered by the Defendant is not "newly discovered." The Defendant proposes to introduce testimony from three lay witnesses, all of whom were present at the scene of the alleged offense and all of whom were known to the Defendant prior to the original hearing. One of them, Kim Jarvis, in fact testified on behalf of the Defendant. Defendant's fourth witness, who purports to have expertise in crime scene reconstruction, could have been retained prior to the original hearing and could have testified at the same.

Second, even if the court permitted the Defendant's additional witnesses to testify at a reconvened hearing, it is very unlikely that the result would change. Both officers testified that as they left the front of 406 South Union Street, they walked back to their cruisers which were parked on that street to the south of the premises. As they did so, they observed a vehicle being backed into a parking space on Bayside Street. The Defendant was identified at hearing as the operator of the vehicle.

The "new" evidence proffered by the Defendant's witnesses, individually and collectively, is that they doubt that the officers could have seen what they claim they did. In the best case scenario (from Defendant's perspective) the fact finder would have to make a subjective judgment about whose version to believe. In fact, the testimony of Kim Jarvis presented on December 6 corroborates the officers' versions and thereby provides reasonably objective evidence of the accuracy of the same.

Both officers testified before they knew what Ms. Jarvis' testimony would be. They both testified that they saw the Defendant park his vehicle at the curb on Bayside Street. Ms. Jarvis also testified that she saw him "back his vehicle into that parking space." Without the Jarvis testimony one could plausibly argue that the police made up a story. But Ms. Jarvis corroborated the key police evidence. If the police made up their stories, they must have been terrific psychic guessers.

¶ 37. Defendant asserted in the trial court, and renews that assertion here, that he was entitled to a new suppression hearing once he demonstrated that he had new evidence prior to trial and, in any event, his proffer raised a serious question as to the propriety of the original ruling. We disagree that defendant relies upon the proper standards. The trial court has broad discretion in deciding whether to reopen the evidence in connection with a criminal pretrial motion and to reconsider its pretrial

order. See *State v. Tongue*, 170 Vt. 409, 414, 753 A.2d 356, 359 (2000). The court is not required to reconsider its ruling whenever new facts are presented; instead, it is "better practice for the court to reconsider a pretrial ruling 'where serious grounds arise as to the correctness of the . . . ruling.'" *Id.* (quoting *State v. Bruno*, 157 Vt. 6, 8, 595 A.2d 272, 274 (1991)). We have stated that trial court reconsideration of pretrial suppression rulings should be the exception, not the rule. *Id.* Like this case, *Tongue* involved a renewed motion to suppress made in advance of trial and alleging new facts not presented in the original motion.

¶ 38. The trial court's decision denying the renewed motion was fully consistent with *Tongue*. The court analyzed whether serious grounds had been raised that showed the incorrectness of the original decision and concluded that serious grounds had not been raised given all the evidence. Consistent with our holding that reconsideration of a motion to suppress should be the exception in order to ensure judicial economy, the court faulted defendant for failing to present the new evidence at the time of the hearing on the original motion to suppress. We conclude that the court acted within its discretion in denying the defendant's renewed motion to suppress.

*Affirmed.*

2003 VT 86A