2013 VT 15

## State of Vermont v. Todd Dunham

## State of Vermont v. Heidi Tatham

[67 A.3d 275]

Nos. 12-130 & 12-137

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed March 1, 2013

*Michael Kainen*, Orange County Deputy State's Attorney, Chelsea, for Plaintiff-Appellee.

*Christopher A. Dall* of *DesMeules, Olmstead & Ostler*, Norwich, for Defendant-Appellant Dunham.

*George E. Spaneas*, Lebanon, New Hampshire, for Defendant-Appellant Tatham.

¶ 1. **Skoglund, J.** The question presented by this consolidated appeal is whether a police officer's visual estimate of defendant's speed can support a reasonable suspicion to warrant a traffic stop. Defendants Todd Dunham and Heidi Tatham argue that a visual estimate amounts to nothing more than a mere hunch or guess, and fails to provide objective grounds for a traffic stop. We disagree and affirm the denial of defendants' motions to suppress.

¶ 2. The facts in both cases are not in dispute. Just before midnight on December 10, 2011, a Vermont State Trooper, stationed in a convenience store parking lot in Fairlee, Vermont, observed a truck operated by defendant Todd Dunham traveling south on U.S. Route 5. As the truck neared the intersection of Lake Morey Road, approximately one hundred feet from where the officer was parked, its tires spun and it appeared to accelerate rapidly. Due to his position, the officer was unable to use his radar to determine the truck's speed, but as the truck passed and traveled away from the officer, he visually estimated the speed of the truck to be forty-five miles per hour in a posted thirty-miles-per-hour zone. The officer acknowledges that the truck was not speeding when it approached the intersection. In fact, the officer had to turn and look over his shoulder to keep the truck in view. He did not testify as to how long he observed the truck or how far away it was when he estimated its speed.

¶ 3. Having decided the truck was speeding, the officer pulled onto Route 5, followed the truck, and effected a traffic stop. Defendant Dunham was thereafter cited for driving under the influence and issued a civil suspension notice. Defendant filed a

motion to suppress challenging the underlying stop, which was denied. Defendant appeals the denial of his motion to suppress, arguing that the officer's visual speed estimate did not provide reasonable suspicion for the traffic stop.

¶ 4. On the night of September 15, 2011, a Vermont State Trooper traveling on Barton Street approached the intersection of Barton and Main Street in the Town of Bradford. He observed defendant Heidi Tatham driving along Main Street. He estimated defendant's speed to be approximately forty miles per hour in a posted twenty-five-miles-per-hour zone. Because he was perpendicular to the vehicle when it went by, he was unable to target the vehicle with radar. The officer followed and stopped the vehicle with the intention of writing a warning ticket for speeding but ended up processing her for driving under the influence. Defendant Tatham filed a motion to suppress all evidence obtained from the stop, arguing the traffic stop was not based on reasonable suspicion. The motion to suppress was denied and now forms the basis of her appeal.

¶ 5. In reviewing a motion to suppress, we apply a deferential standard of review to the trial court's findings of fact. *State v. Bain*, 2009 VT 34, ¶ 15, 185 Vt. 541, 975 A.2d 628. Findings of fact shall be upheld unless "there is no reasonable or credible evidence to support them." *Id.* (quotation omitted). "Legal conclusions are reviewed de novo." *Id.* (quotation omitted).

¶ 6. Defendant Tatham first challenges the court's factual finding that the officer had sufficient time to accurately estimate the speed at which defendant was traveling. She argues that the officer's two-second, nighttime observation was not sufficient to gauge the speed of her car. The court found that the officer had "sufficient time to render an opinion as to the speed" and because of the officer's training and experience, his opinion was given with reasonable accuracy. Basing its conclusion on the credible testimony of the officer, the court reasoned that the officer's observation, though brief, provided sufficient time for him to observe the vehicle as it traveled on a path perpendicular to his own, allowing a strong line of observation. Because the court's conclusion is reasonable and supported by the officer's testimony, it is not one that we will disturb. See *id.* ¶¶ 16-17.

¶ 7. As a matter of law, both defendants argue that a visual estimate of speed provides an insufficient ground to justify a

traffic stop. The Fourth Amendment to the United States Constitution protects the right of the people against unreasonable searches and seizures. U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). It is well settled that police may stop a vehicle "to investigate a reasonable and articulable suspicion that a motor vehicle violation is taking place." *State v. Lussier*, 171 Vt. 19, 34, 757 A.2d 1017, 1027 (2000); see also *United States v. Moore*, No. 10 Cr 971(RJH), 2011 WL 6325973, at *4 (S.D.N.Y. Dec. 19, 2011) ("Because an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth Amendment, such stops must be justified by probable cause or a reasonable suspicion." (quotation and alteration omitted)).

■ ¶ 8. Reasonable and articulable suspicion does not require proof beyond a reasonable doubt or even proof by a preponderance of the evidence that criminal activity is afoot. See *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. Rather, the officer needs more than only an "inchoate and unparticularized suspicion or 'hunch'" to make a lawful investigatory stop. *State v. Sutphin*, 159 Vt. 9, 11, 614 A.2d 792, 793 (1992) (quotations omitted). A mere conclusory statement as to a violation will not suffice. *State v. Wood*, No. 2010-350, 2011 WL 4976125, at *2 (Vt. Apr. 21, 2011) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx. In sum, an officer must articulate facts, which, in light of his experience and personal knowledge, together with reasonable inferences drawn from those facts, would warrant a temporary intrusion on the freedom of the person detained. The issue of whether a reasonable suspicion supports a particular stop is factually driven, and depends on the totality of the circumstances. *State v. Kettlewell*, 149 Vt. 331, 335, 544 A.2d 591, 594 (1987). We conclude that there was a legal basis for the stop in both cases.

■ ¶ 9. Many courts have held that a sufficiently trained officer's visual estimate of speed can supply reasonable suspicion to justify a traffic stop, and in some cases, probable cause. See *United States v. Colden*, No. 11-M-989-SKG, 2011 WL 5039777, at *2 (D. Md. Oct. 21, 2011) (citing *City of Barberton v. Jenney*, 929

N.E.2d 1047 (Ohio 2010)); *Sazenski v. Comm'r of Pub. Safety*, 368 N.W.2d 408, 409 (Minn. Ct. App. 1985); see also *United States. v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (finding "that an officer's visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances"); *State v. Allen*, 978 So. 2d 254, 256 (Fla. Dist. Ct. App. 2008) (After noting that "[o]ther states have also concluded that an officer's observations of a vehicle may provide reasonable suspicion that the vehicle is speeding," court held detective's observations of defendant's speed were sufficient to establish probable cause to stop vehicle for traffic infraction); *State v. Barnhill*, 601 S.E.2d 215, 218 (N.C. Ct. App. 2004) (allowing officer's visual estimations of speed to establish probable cause for stop). Further, a police officer does not need to know the exact speed at which an automobile is traveling in order to make a stop for a traffic violation. *Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977). More often, evidence that officers receive proper roadside and academy training, spend considerable time on road patrol, gain experience estimating speed and comparing estimates against radar, and historically exhibit a margin of error of only a few miles per hour, serves to qualify officers to estimate speed. *People v. Correia*, 531 N.Y.S.2d 998, 1001 (Vill. Ct. 1988); see also *Ludwig*, 641 F.3d at 1247-48; *United States v. Lork*, 132 F. App'x 34, 35 (5th Cir. 2005) (per curiam); *Colden*, 2011 WL 5039777, at *2.

¶ 10. In both cases, the lower courts deemed the officers' visual estimate credible. The officers in both instances underwent specialized training in visual speed estimation for radar certification. This training included watching vehicles, estimating their speed, and then confirming the speed estimate by use of radar. To successfully complete this aspect of radar training, it was necessary for the officers to estimate vehicle speed to an accuracy of five miles per hour. Both officers successfully completed the training in 2006 and have continued to make visual estimates of speed when stopping vehicles for speeding violations — each making anywhere from one to three thousand motor vehicle stops for excessive speed. Both believed their estimations have dramatically improved over time and that they are capable of estimating speed within five miles per hour of the radar speed reading nearly every time. Cf. *State v. Estes*, 223 P.3d 287, 290-91 (Idaho Ct. App. 2009) (holding that trained officer's visual speed estimate was

insufficient to convict defendant of speeding where officer's testimony failed to reveal accuracy rates for visual speed estimations).

■ ¶ 11. What is more compelling in these cases is the fact that in both instances the observed speed was significantly higher than the posted speed limit, such that the difference would be discernible to a casual observer, particularly a trained law enforcement officer. See *United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012) ("[W]here an officer estimates that a vehicle is traveling in significant excess of the legal speed limit, the speed differential — i.e., the percentage difference between the estimated speed and the legal speed limit — may itself provide sufficient 'indicia of reliability' to support an officer's probable cause determination."); *Barnhill*, 601 S.E.2d at 218 ("[I]t is not necessary that an officer have specialized training to be able to visually estimate the speed of a vehicle," even a lay person is entitled to testify as to visual estimation of speed); see also *United States v. Banks*, No. 2:08-cr-19-FtM-29SPC, 2008 WL 4194847, at *1, *4 (M.D. Fla. Sep. 11, 2008) (finding probable cause where officer observed vehicle traveling at high rate of speed, estimated to be around fifty miles per hour in a thirty-miles-per-hour zone, making it extremely obvious to the officer that vehicle was speeding); *State v. Butts*, 269 P.3d 862, 873 (Kan. Ct. App. 2012) (finding reasonable suspicion where officer estimated vehicle to be traveling at a rate of forty-five miles per hour in a thirty-miles-per-hour zone); cf. *Sowards*, 690 F.3d at 591-92 (finding officer's uncorroborated visual estimate of defendant traveling seventy-five miles per hour in a seventy-miles-per-hour speed limit zone insufficient to justify stop, and holding "where an officer estimates that a vehicle is traveling in only slight excess of the legal speed limit, and particularly where the alleged violation is at a speed differential difficult for the naked eye to discern, an officer's visual speed estimate requires additional indicia of reliability to support" a stop). Here, defendant Tatham was observed traveling forty miles per hour in a twenty-five-miles-per-hour zone — roughly 60% above the limit. Defendant Dunham was also observed traveling at a high rate of speed — forty-five miles per hour in a posted thirty-miles-per-hour zone. Because both defendants were estimated to be traveling in significant excess of the posted speed limits, where the speed differential would be obvious to a casual observer, we find such facts give strong indicia of reliability to support the trial court's findings.

¶ 12. It is not disputed that both officers' conclusions would have been further bolstered by referencing time and distance, pacing methods, or through mechanical verification; nonetheless, based on the significant speed differentials, as well as the officers' experience and training, we find that the trial courts' conclusions that both officers had reasonable suspicion to effect the traffic stop is supported by the evidence.

¶ 13. We are persuaded that the lower courts' factual findings were supported by substantial competent evidence and, given the totality of the circumstances, the lower courts did not err in concluding that the officers here had reasonable suspicion to believe that both defendants were traveling in violation of the posted speed limit. We, therefore, affirm the denial of defendants' motions to suppress.

*Affirmed.*