BYE, Circuit Judge,
dissenting.
I disagree an objectively reasonable officer would have had a sufficient basis to stop Gaffney’s car for speeding. Consequently, I would reverse the district court’s denial of Gaffney’s motion to suppress, vacate his conviction, and remand for further proceedings. I therefore respectfully dissent from Section II.A. of the majority’s opinion and would not reach Section II.B.
“[T]he underlying command of the Fourth Amendment is always that searches and seizures must be reasonable .... ” Wilson v. Arkansas, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (internal quotation marks omitted). As applicable to Gaffney’s case, a traffic stop is reasonable “when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion” that a traffic violation has occurred. United States v. Gordon, 741 F.3d 872, 876 (8th Cir.2013) (internal quotation marks omitted).
The objective facts of Gaffney’s case are contained within the video created by the dashboard camera located in Officer Bovy’s patrol car. From this video, the investigator determined Gaffney’s vehicle traveled at an average of 35.8 miles per hour, in a 35 mile per hour speed zone, from the time Officer Bovy could first see Gaffney’s vehicle on Franklin Street until *871 the point where Gaffney’s vehicle was parallel with Officer Bovy’s patrol car. Over the course of this period, the vehicle appears to travel at a consistent speed, and Gaffney does not brake until after his vehicle has already passed Officer Bovy’s patrol car. Further, when Gaffney brakes, he is doing so to slow his vehicle to make a right turn and almost immediately stops. All of these events occurred during nighttime hours.
From these facts, the majority somehow concludes a reasonable officer would have a sufficient basis to stop Gaffney for speeding. I disagree. To conclude Officer Bovy or any other officer could visually discern a difference of a mere .8 miles per hour above the posted speed limit is confounding. See United States v. Sowards, 690 F.3d 583, 594 (4th Cir.2012) (“[T]he accuracy of human estimation of speed cannot easily, readily, and accurately determine between such small variations [5 m.p.h.] in speed.” (internal quotation marks omitted)). Moreover, although this figure is an average, and the district court concluded Gaffney “likely traveled faster than 35.8 miles per hour at some point or points over the course of the nine seconds,” the objective facts do not support this conclusion. The video shows Gaff-ney’s vehicle traveling at a consistent speed, and he did not begin to slow his vehicle until he passed the end point of the investigator’s measurements.
Further, the majority attempts to make Officer Bovy’s familiarity with the area and that he thought Gaffney was speeding into objective facts. While courts have considered an officer’s visual estimation of speed as an objective fact to consider in the reasonable suspicion analysis, those courts have found the officers had the necessary skills, training, and experience to make such an estimation. See United States v. Mubdi, 691 F.3d 334, 341 (4th Cir.2012), vacated on other grounds, — U.S.-, 133 S.Ct. 2851, 186 L.Ed.2d 902 (2013) (finding officers’ visual estimates were sufficient to support probable cause because the two officers gave virtually identical estimates and were required, as part of a radar certification class, to visually estimate the speed of vehicles within a narrow margin of error); United States v. Ludwig, 641 F.3d 1243, 1247 (10th Cir.2011) (crediting an officer’s visual estimation of speed to determine whether probable cause to stop existed partially because the officer possessed 15 years’ experience as a highway patrolman watching cars and estimating speeds); State v. Dunham, 193 Vt. 378, 67 A.3d 275, 279 (2013) (considering whether officers “reeeive[d] proper roadside and academy training, [have] spen[t] considerable time on road patrol, gain[ed] experience estimating speed and comparing estimates against radar, and historically exhibited] a margin of error of only a few miles per hour” as factors to determine whether the officers are qualified to visually estimate speed).
Contrary to cases which have utilized officers’ estimations as objective facts, Officer Bovy lacked the credentials to visually estimate speed. He received visual estimation speed training over a decade prior to Gaffney’s stop, he did not provide a margin of error as to how accurate any visual estimations of speed he previously made had been, he had issued very few speeding citations, and he believed he had never turned on the radar in his patrol car. Further, he was unable to provide an estimate of the distance Gaffney’s car covered as it approached Officer Bovy’s patrol car although he explained monitoring the distance a vehicle travels over a surface area is part of the technique he utilizes for visually estimating speed. Because of Officer Bovy’s inexperience in visually estimating speed, he grossly estimated that Gaffney’s speed was 50 to 55 miles per hour, well above Gaffney’s actual average *872 speed. Officer Bovy’s estimation is therefore subjective and does not have the support to be considered as a particularized, objective fact when determining whether reasonable suspicion existed. See So-wards, 690 F.3d at 588-90, 594 (finding that because an officer lacked specialized training in the estimation of vehicle speeds, lacked a technique or method to “guess” visual speeds, and had difficulty with measurements, his visual estimation of speed “was in fact a guess that was merely conclusory, without an appropriate factual foundation, and simply lacking in the necessary indicia of reliability to be an objectively reasonable basis for probable cause to initiate a traffic stop”).
The only other objective facts cited by the majority to support its conclusion are that Gaffney admitted to driving “in the 40s” and he “braked hard” after Officer Bovy made a u-turn. First, I do not believe we can consider Gaffney’s alleged admission to speeding because Officer Bovy testified Gaffney made this statement after Officer Bovy had already stopped the vehicle. See United States v. $45,000.00 in U.S. Currency, 749 F.3d 709, 715 (8th Cir.2014) (“[I]f it was not objectively reasonable for the officer to believe that a violation was occurring at the time that the officer decided to effect the stop, then the officer lacked probable cause to seize the motorist.... Accordingly, the critical inquiry ... is what the stopping officer observed before pulling over a motorist.”); see also United States v. Sanders, 196 F.3d 910, 913 (8th Cir.1999) (“The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.”).
Second, the video taken by the dashboard camera does not support Officer Bovy’s assertion that Gaffney “braked hard” after he passed Officer Bovy’s patrol car. Instead, the video depicts Gaffney braking at a reasonable pace to make a right turn and immediately stop. Nonetheless, even if we were to consider braking as an objective fact, courts have not found braking, standing alone, as a sufficient basis to conclude an individual was speeding; rather, other indicia of speeding were present which supported the constitutionality of the traffic stop. See United States v. Colden, No. 11-M-989-SKG, 2011 WL 5039777, at *1 (D.Md. Oct. 21, 2011) (finding the officer’s uncontested visual estimation of defendant’s speed, combined with the officer’s observations that the vehicle shook and defendant tapped his brakes, amounted to reasonable articulable suspicion that defendant was speeding); State v. Steele, No. 101,250, — Kan. App.2d -, 2009 WL 3428624, at *3 (Kan.Ct.App. Oct. 23, 2009) (finding substantial competent evidence supporting the trial court’s finding of reasonable suspicion of speeding because the officer observed defendant traveling at an excessive rate of speed, the officer heard a loud engine roar, and the officer observed defendant slam on his brakes). Gaffney’s case lacks any other objectively reasonable indication that he was speeding, and as a result, braking alone cannot provide reasonable suspicion for stopping his vehicle.
For the reasons provided, I would reverse the denial of Gaffney’s motion to suppress, vacate his conviction, and remand for further proceedings.