*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-153

MARCH TERM, 2017

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Addison Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Jeffrey Giknis | } | DOCKET NO. 359-8-15 Ancr |

Trial Judge: John W. Valente

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conditional guilty plea to driving under the influence of alcohol (DUI). He argues that the court erred in denying his motion to suppress. We affirm.

Defendant was charged with DUI following an early morning roadside stop. The stop was based in part on a tip. Defendant moved to suppress the evidence against him, arguing that the tip was unreliable and that there was no other basis for the stop. Following a hearing, the court denied the motion. It made the following findings. On the night in question, two patrol officers received information from a police dispatcher about a possibly impaired driver. The dispatcher told the officers that a convenience store clerk had reported that a person who appeared to be intoxicated had just entered the store, attempted to purchase alcohol after hours, left the store, entered a red truck, and drove northbound on Route 22A. The officers were given a description of the truck, its license plate number, and the direction of travel. The officers observed the truck leave Route 22A and head north on Route 7. While traveling on Route 7, the truck signaled a left turn near a church, but failed to turn. The officers also observed the truck weaving within its lane. One of the officers, Sergeant Newton, testified that these actions indicated a potentially impaired driver. Shortly thereafter, the officers stopped the truck. Defendant exhibited physical signs of impairment, and he was charged with DUI. At some point after the DUI processing, Sergeant Newton learned that the person whom the clerk had observed in her store was a passenger in the red truck, not the driver.

Defendant argued that the clerk's mistake was fatal, and that the police could not rely on the tip in making the stop. The court rejected this argument. It concluded, first, that the tip had sufficient indicia of reliability to support the stop. The court cited the fact that the clerk was an identifiable person rather than an anonymous tipster; she described an intoxicated person and identified a particular vehicle; and she predicted the vehicle's path. Additionally, the court found that the tip, in conjunction with the officer's observations of defendant's driving, provided the officer with a reasonable and articulable suspicion that defendant was DUI. Defendant entered a conditional guilty plea to DUI, reserving the right to challenge the court's suppression ruling. This appeal followed.

We begin with the general legal principles applicable to this case. "A police officer is authorized to make an investigatory stop based on a reasonable and articulable suspicion of criminal activity. The officer must have more than an unparticularized suspicion or hunch of criminal activity, but needs considerably less than proof of wrongdoing by a preponderance of the evidence." State v. Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15 (citations omitted). Courts "must consider the totality of the circumstances in evaluating the validity of an investigatory seizure." State v. Kettlewell, 149 Vt. 331, 335 (1987) (explaining that test is "whether, based upon the whole picture, [an officer] . . . could reasonably surmise that the particular vehicle [he or she] stopped was engaged in criminal activity" (quotation omitted)). "Grounds for an investigatory stop are not limited to the officer's own observations. An informant's tip, if it carries enough indicia of reliability, may justify a forcible stop." Id. On review of a motion to suppress, we will uphold the court's factual findings unless clearly erroneous. Simoneau, 2003 VT 83, ¶ 14. We review the court's legal conclusion as to the legality of the stop de novo. Id.

Defendant first argues that, to meet its burden of proof, the State was required to show what the store clerk communicated to the police dispatcher, rather than what the dispatcher communicated to the patrol officers. He maintains that there is no evidence of the clerk's statements that would allow for an examination of the basis of the clerk's knowledge, reliability, or accuracy. Defendant thus argues that the State failed to show that the tip to dispatch contained information triggering a reasonable, articulable suspicion of DUI. Relying on this premise, defendant reasons that because the tip to dispatch lacked sufficient information for reasonable suspicion, the "bulletin" from dispatch to the responding officers also did not provide reasonable suspicion. In support of this argument, defendant relies heavily on United States v. Hensley, 469 U.S. 221 (1985), which involved a stop based on a "wanted" flyer.

Defendant did not argue below that the State must prove what the clerk communicated to the police dispatcher rather than what the dispatcher communicated to the police officers who made the stop. He waived this argument by failing to raise it below. In any event, defendant fails to show any error, let alone plain error. See State v. Mead, 2012 VT 36, ¶ 27, 192 Vt. 1 (identifying test for plain error). Defendant relies on case law that is inapposite. There is a distinction between "wanted flyers" or "conclusory directives" that may come from police bulletins and cases "where the dispatcher merely passes on the facts upon which the officer in the field makes a decision as to whether there is a reasonable suspicion for a stop." 4 W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, "Information via Police Channels," § 9.5(j) (5th ed.); see also id. "Information from an Informant," § 9.5(i) (recognizing that "the central issue as to this category is whether the informant's information is so reliable and complete that it makes past, present or pending criminal conduct sufficiently likely to justify a stopping of the designated person for investigation"). The case on which defendant primarily relies, Hensley, 469 U.S. 221, involves the first category. The instant case involves the second category.

In Hensley, a police department issued a "wanted flyer" stating that a named individual was wanted for investigation of an aggravated robbery. Id. at 223. The flyer described the individual in question, and provided the date and location of the alleged robbery; it requested other police departments to pick up and hold this individual if he was located. As is evident, the flyer did not provide any specific factual information from which another officer could make his or her own determination as to reasonable suspicion. It is in this context that the U.S. Supreme Court held that "[a]ssuming the police make a Terry stop in objective reliance on a flyer or bulletin, . . . the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying the stop, and if the stop that in fact occurred

2

was not significantly more intrusive than would have been permitted the issuing department." Id. at 233 (citation omitted).

The instant case, by contrast, involves the second category described above. A tipster does not need to have reasonable suspicion that a crime has been committed before a police officer can effectuate a Terry stop. Instead, it is the police officer who must decide, based on the information provided, if a stop is warranted. Unlike Hensley, the officer here made his own determination, based on the information relayed to him by the police dispatcher, as to whether a stop should be made. In such circumstances, the appropriate inquiry is whether the tip, which alleged a crime— that a possibly impaired driver was heading northbound on Route 22A—was sufficiently reliable to justify the stop.

The trial's court inquiry was consistent with relevant case law, and we reject defendant's challenges to the court's analysis. See Kettlewell, 149 Vt. at 336 (recognizing that "[g]enerally, information about criminal or suspicious activity from a citizen, who is not a paid informant and is unconnected with the police, is presumed to be reliable"); see also Navarette v. California, 134 S. Ct. 1683, 1689 (2014) (explaining that where informant provides specific information related to report, such as model and make of car and license plate number, caller necessarily claims eyewitness knowledge of incident, and "[t]hat basis of knowledge lends significant support to the tip's reliability," as does contemporaneous reporting of observed criminal activity, use of 911 system, and police confirmation of vehicle's predicted location).

As we have recognized, moreover, drunk drivers present a "high degree of danger," and "the level of danger that the tip reveals is a 'crucial factor' in 'determining the reasonableness of a police response and the reliability required of an informant's tip.' " State v. Lamb, 168 Vt. 194, 199 (1998) (citation omitted). We agree with the trial court that the information provided to the officers here via the tip—considered in conjunction with the officers' observation of defendant's driving—justified an investigative stop. See State v. Pratt, 2007 VT 68, ¶¶ 6-7, 182 Vt. 165 (recognizing that reasonable suspicion of DUI requires examination of totality of circumstances, and consequently it "may be supported by evidence of erratic driving, whether or not it amounts to a specific traffic violation," and further noting that "we rely on the expertise of the officer in recognizing signs of impaired operation" and we recognize "the overwhelming weight of authority from other jurisdictions holds that repeated intra-lane weaving can create reasonable suspicion of impaired operation").

Defendant urges us to take a different view of the level of intra-lane weaving, and the significance of his failure to turn after signaling for a turn. Viewing defendant's behavior in its entirety, the officer found his driving erratic and a sign of a possibly impaired driver. The court credited the officer's testimony, and we will not reweigh the evidence on appeal. State v. Mayo, 2008 VT 2, ¶ 14, 183 Vt. 113 ("The credibility of witnesses, weight of the evidence and its persuasive effect are matters for the exclusive determination of the trier of fact," and court's findings "must stand if supported by credible evidence, even though there may be inconsistencies or substantial evidence to the contrary" (quotation omitted)).

Finally, we reject defendant's assertion that the court's factual findings regarding the content of the clerk's tip and intra-lane weaving were clearly erroneous. Defendant takes issue with the court's finding that "[a]n identified person, a clerk at Champlain Farms reported that a person who appeared to be intoxicated, had just entered the store, attempted to purchase alcohol after hours, left the store, got in a red truck and drove northbound on Route 22A." He cites "the lack of evidence as to what transpired between the clerk and dispatch." First, it is evident from

3

the context that in making this finding, the court is referring to the information provided to the police by the police dispatcher. Even if it were not, the arresting officer testified that he received information from dispatch that "the cashier from Champlain Farms had said that an intoxicated person had attempted to purchase alcohol after hours, and then got in that truck and drove northbound on 22-A." This evidence supports the court's finding.

With respect to intra-lane weaving, the court found that the officer observed the truck weaving within its lane. The court determined that the officer's dashboard camera was too far away to draw any conclusion with respect to weaving for the first thirty-five seconds of the recording, and that in the following minute, the picture was unclear but appeared to show some intra-lane weaving. The court credited the officer's testimony that what he observes from the patrol car is often more clear than the recording, and it credited his testimony that he observed defendant weaving. Defendant argues that the court's findings are clearly erroneous. According to defendant, the videotape shows, at best, "extremely faint intra-lane weaving." Defendant also challenges the officer's testimony that this weaving was a sign of a potentially impaired driver. As set forth above, the court found the officer's testimony credible and we will not reweigh the evidence on appeal. See Pratt, 2007 VT 68, ¶¶ 6-7. We agree with the State, moreover, that any distinction between defendant's characterization of the videotape as showing "extremely faint intra-lane weaving" and the court's finding that it "was unclear but appeared to show some intra-lane weaving" is insignificant. The court did not err in denying defendant's motion to suppress.

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

4