2006 VT 93

## State of Vermont v. Wesco, Inc. and Odessa Corporation

[911 A.2d 281]

No. 05-278

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed September 8, 2006

*William H. Sorrell,* Attorney General, and *Mark J. Di Stefano* and *Jeanne Elias,* Assistant Attorneys General, Montpelier, for Plaintiff-Appellant.

*Robert F. O'Neill* and *Heather Rider Hammond* of *Gravel and Shea,* Burlington, for Defendants-Appellees.

¶ 1. **Reiber, C.J.** In this interlocutory appeal, the State of Vermont appeals a discovery order of the Chittenden District Court. Appellees Wesco Incorporated and Odessa Corporation, ("Wesco"), owners and operators of numerous gas stations in Vermont, seek discovery to support their claim of selective prosecution against criminal charges of recklessly releasing gasoline into the environment at the Winooski Exxon gas station in Winooski, Vermont, which they owned and operated when the alleged releases occurred. After our decision in *State v. Simoneau,* 2003 VT 83, 176 Vt. 15, 833 A.2d 1280, the district court reversed its earlier order, which had denied the discovery for failure to make a threshold showing of selective prosecution, and ordered the State to produce the materials sought by Wesco. We agree with the State that the trial court erred in interpreting our decision in *Simoneau* as applied to discovery in a selective prosecution case, and reverse. The State also appeals the court's decision to allow Wesco to depose state computer systems administrators to discover whether it is possible to resurrect certain emails Wesco believes existed at one time but which the State is unable to produce. We reverse that ruling as well.

¶ 2. This case, part of an ongoing criminal matter with which we are familiar, *Wesco, Inc. v. Sorrell,* 2004 VT 102, 177 Vt. 287, 865 A.2d 350, concerns discovery disputes in a criminal action in which the Attorney General's Office (AGO) filed a twenty-seven count information charging Wesco with recklessly releasing gasoline at its Winooski station in violation of Vermont's criminal environmental statutes. For of a number of reasons, which the State argues are unsupported by the record, Wesco began to suspect that it was being targeted by the State for prosecution. Wesco theorizes that it became a retaliatory target after Wesco's president, David Simendinger, exercised his First Amendment rights by testifying against a proposed fee increase that would fund a regulatory program of the Agency of Natural Resources (ANR); the State charged Wesco two months after that testimony but almost three years after the leaks allegedly occurred. Wesco alleges that its suspicions began after it conducted written discovery and depositions of State witnesses about

the "pre-charging investigation into the Winooski Exxon and the Hilltop Texaco, and about the process and method of the referral of the investigation from ANR to the [AGO]." The Hilltop Texaco is another gas station in a different location, owned and operated by Wesco, which was investigated but not charged. Wesco also asserts that, from depositions, it "discovered that certain relevant e-mails relating to the investigation into the Winooski Exxon had been deleted and certain e-mails that were produced referenced other messages that were missing, including e-mail correspondence to and from the [AGO]." Finally, Wesco argues that State employees were never told not to destroy e-mail regarding this prosecution, and that its own employees and corporate officers received "poor treatment" during the execution of the search warrants. In return, the State argues that Wesco has produced no evidence in support of its theory, and that Wesco's citations to the record merely refer to Wesco's own arguments in written briefs and in oral arguments before the trial court.

¶ 3. In support of its selective prosecution theory, Wesco seeks to compel the State to provide a number of discovery items, three of which are the subject of this appeal: (1) documents regarding the AGO and the ANR investigation into another gas station owned by Wesco, the Hilltop gas station; (2) communications about Wesco's president's testimony before a legislative committee;[1] and (3) depositions of the AGO's and ANR's computer systems administrators to determine how deleted emails and/or missing emails could be recovered.

¶ 4. In April 2003, the district court denied Wesco's motions to compel in a written order. The court reasoned that this Court would likely endorse the United States Supreme Court's decision in *United States v. Armstrong*, which held that, in order to obtain discovery in a selective prosecution case, a defendant must make a preliminary showing of both discriminatory effect and discriminatory intent. 517 U.S. 456, 468 (1996). Because appellants had not made such a showing, the court denied the motions to compel. Specifically, the court noted that documents regarding investigations of only Wesco facilities would not likely support Wesco's theory that it was selected

---

[1] At oral argument, Wesco argued that it was before the Court on two items of discovery rather than three, and did not mention the communications regarding Simendinger's testimony before the Legislature. Our analysis as to this discovery item would be the same as our analysis as to the Hilltop file.

for prosecution because Wesco could provide no context to show that similarly situated persons had been treated differently. The court also held that Wesco failed to provide even "some evidence" that the State was motivated by a discriminatory purpose.

¶ 5. The trial court also denied Wesco's motion to compel depositions of the AGO's and ANR's computer systems administrators, concluding that "[w]ithout determining at this time whether the email in question is discoverable, the Court concludes that it is not the proper function of the defense to conduct a search — whether actual or virtual — of the State's records in order to find the wayward email." Previously, upon the court's suggestion, as an alternative means of discovery, the State had provided Wesco with written information concerning the State's computer system, but Wesco renewed its deposition request after receiving that information. The court concluded that the demand was unreasonable and oppressive and, as Wesco apparently sought a specific email that was referenced by an expert during a deposition but that the State had not been able to produce, it could pursue that under a lost evidence theory. *State v. Delisle*, 162 Vt. 293, 311, 648 A.2d 632, 642 (1994).

¶ 6. In November 2003, Wesco filed a motion to dismiss for selective prosecution, alleging that Wesco was the sole opponent to the ANR fee increase in the Legislature and also the sole target for criminal prosecution of all 778 sites with claims to the State's petroleum clean-up fund due to releases of petroleum from underground storage tanks. That motion is still pending in the trial court.

¶ 7. On its own motion in June 2004, the trial court directed the parties to brief the issue of how this Court's decision in *State v. Simoneau*, 2003 VT 83, 176 Vt. 15, 833 A.2d 1280, issued in August 2003, affected reconsideration of the trial court's April 2003 order. In October 2004, the trial court ruled and reversed its April 2003 decision, concluding that a less stringent burden applied as a result of *Simoneau*: that a party seeking discovery has the initial burden of demonstrating only the "relevance of the evidence to preparation of the party's case," rather than admissibility of the evidence. The court concluded that Wesco had met that burden, had proven its need for the evidence, and had proven that the evidence was not available by other means. The court then assigned the burden to the State to establish that Wesco's discovery requests were unreasonable and oppressive, and set a hearing on the matter. After that hearing, the court issued a written entry order on May 19, 2005, ordering the

State to produce a number of discovery items, including the three at issue here. This appeal followed.[2]

I.

¶ 8. The State first argues that the trial court erred when it reversed its April 2003 order and authorized discovery to pursue the selective prosecution claim. Specifically, the State argues that the trial court misinterpreted our decision in *Simoneau*, 2003 VT 83, and that state constitutional separation-of-powers principles require that Wesco make a threshold showing of selective prosecution in order to obtain discovery to pursue a selective prosecution defense. Wesco responds that the trial court properly reconsidered its decision in light of *Simoneau* where this Court "drew such a strong distinction between the scope of federal and state rules of criminal discovery, the holding in *United States v. Armstrong* that F.R.Cr.P. 16 does not require the State to disclose evidence to support a selective prosecution defense cannot apply to the corresponding Vermont rule."

¶ 9. At oral argument, Wesco asked this Court not to decide the issue of selective prosecution, but instead to affirm on other grounds that had been argued but upon which the trial court did not decide. We decline Wesco's request. The State has appealed a decision about access to discovery in a selective prosecution case. We address the issue because it is a novel question of Vermont law. We agree with the State that the decision below was erroneous, and a motion to dismiss on selective prosecution grounds is pending in the trial court.

■ ¶ 10. We typically review a trial court's discovery rulings for an abuse of discretion. *Schmitt v. Lalancette*, 2003 VT 24, ¶ 9, 175 Vt. 284, 830 A.2d 16. To demonstrate an abuse of discretion, a party must show that the trial court either withheld its discretion or exercised it on clearly unreasonable or untenable grounds. *Simoneau*, 2003 VT 83, ¶ 21. When discovery rulings are intertwined with questions of law, however, we do not defer to the trial court but instead review the

---

[2] As a preliminary matter, Wesco argues that this appeal was improvidently granted. Assuming, without deciding, the merits of Wesco's argument, we exercise our discretion to decide the matter in the interests of judicial economy. V.R.A.P. 2; *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 251, 719 A.2d 415, 417 (1998) (Court may suspend application of appellate rules where dismissal would most likely result in another appeal after final judgment, merits of the questions of law have been fully briefed and argued before the Court, and Court has spent valuable time preparing for the case).

matter anew. *State v. Roya*, 167 Vt. 594, 595, 708 A.2d 908, 909 (1998); see *Thompson v. Dewey's S. Royalton, Inc.*, 169 Vt. 274, 276, 733 A.2d 65, 67 (1999) (Court reviews questions of law in nondeferential and plenary manner).

¶ 11. A brief review of the law of selective prosecution is required. "'A selective prosecution claim is ... an independent assertion that the prosecutor has brought [a] charge for reasons forbidden by the Constitution ....'" *State v. Dann*, 167 Vt. 119, 136, 702 A.2d 105, 116 (1997) (quoting *Armstrong*, 517 U.S. at 463). Such a claim "asks a court to exercise judicial power over a 'special province'" of a core executive constitutional function, enforcement of the law. *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). Because prosecutors function as delegates of the executive, they retain broad discretion to enforce the law including — so long as probable cause is present — the decisions whether to prosecute in any given case and what charge to file. *Id.*; see also *State's Att'y v. Att'y General*, 138 Vt. 10, 13, 409 A.2d 599, 601 (1979) (prosecution "granted broad discretion in deciding whether or not to initiate a criminal prosecution"). Courts exercise deference so as not to impair the performance of a core executive constitutional function by potentially "chill[ing] law enforcement," delaying criminal proceedings, "subjecting the prosecutor's motives and decisionmaking to outside inquiry, and ... revealing ... enforcement policy." *Armstrong*, 517 U.S. at 465 (citing *Wayte v. United States*, 470 U.S. 598, 607-08 (1985)).

¶ 12. Judicial deference to that discretion, of course, is subject to the "constitutional constraints" that decisions to prosecute may not be based on an "unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights," *Wayte*, 470 U.S. at 608 (citations and quotations omitted), including First Amendment rights. *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972). In *Armstrong*, the defendant argued that the government impermissibly targeted him for prosecution because of his race in violation of equal protection, 517 U.S. at 458; here, Wesco charges that it is being singled out because its president exercised his First Amendment right to free speech by testifying before a legislative committee.

¶ 13. In order to "overcome the presumption that a prosecution is undertaken in good faith," *State v. Zaccaro*, 154 Vt. 83, 92, 574 A.2d 1256, 1262 (1990), a defendant must prove two elements:

"(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

*Id.* at 92, 574 A.2d at 1261 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).

¶ 14. Like this case, *Armstrong* addressed the showing required to obtain discovery from the government in a selective prosecution claim. The United States Supreme Court held that a defendant must provide "'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent."[3] *Armstrong*, 517 U.S. at 468 (quoting *Berrios*, 501 F.2d at 1211). The Court reasoned that, if discovery is ordered in a selective prosecution case absent a threshold showing, the government would be faced with many of the same costs in responding to a prima facie case as in defending against a claim. *Id.* In the interest of not diverting prosecutors' resources and possibly disclosing prosecutorial strategy, the Court concluded, the same "rigorous standard" should apply to limit defendants' access in discovery. *Id.*

¶ 15. We are persuaded by *Armstrong*, and *Simoneau* does not change that. In *Simoneau*, we addressed whether discovery need be shown to be admissible evidence at trial in order to be subject to discovery by subpoena and deposition. 2003 VT 83, ¶¶ 26-30; V.R.Cr.P. 15, 17. The defendant had sought, by subpoena, to obtain the arresting officer's training records and to depose the keeper of the records, in order to show that the officer had been dismissed for lying and violation of the rules. We held that whether the requested discovery was granted did not rest on its actual admissibility at trial. *Simoneau*, 2003 VT 83, ¶¶ 28-29. Instead, production pursuant to a

---

[3] To show "some evidence" of discriminatory effect, a defendant must show "some evidence that similarly situated defendants ... could have been prosecuted, but were not"; *Armstrong* did not address the "some evidence" showing of discriminatory intent. 517 U.S. at 469. Proof on the merits of the discriminatory intent prong may be demonstrated through circumstantial or statistical evidence. See *United States v. Alameh*, 341 F.3d 167, 174 (2d Cir. 2003) (noting examples of insufficient showing of "some evidence" of discriminatory intent).

subpoena is "'discretionary and will be denied unless the party seeking it meets a burden of showing the evidentiary character and relevance of the material, its unavailability by other means, and its necessity for . . . trial preparation.'" *Id.* ¶ 28 (quoting Reporter's Notes, V.R.Cr.P. 17). The judge may quash the subpoena "'if compliance would be unreasonable or oppressive.'" *Id.* We determined that the breadth of the subpoena rule is consistent with that of the deposition rule, Rule 15, which gives defendants the right to take a deposition upon "a showing that the testimony may be material or relevant on the trial or of assistance in the preparation of his defense." *Id.* ¶ 29 (internal quotations and citations omitted).

¶ 16. Wesco attempts to distinguish *Armstrong* by characterizing it as based on the federal rules and by arguing that we rejected application of the federal rules to Vermont law of criminal discovery in *Simoneau.* Wesco's argument is overblown. Wesco is correct that, in *Armstrong,* the Court also ruled that (then) Federal Rule of Criminal Procedure 16(a)(1)(C), which required disclosure of items "material to the preparation of [the defendant's] defense," provided no basis by which the defendant could obtain discovery because a selective prosecution is not a "defense" to the merits of the government's case in chief within the meaning of that rule. *Armstrong,* 517 U.S. at 463. Wesco also correctly argues that Vermont's criminal discovery rules are broader than the federal rules in many respects. *Simoneau,* 2003 VT 83, ¶¶ 26-30. It does not follow, however, that Wesco is entitled to selective prosecution discovery under the "may be material or relevant on the trial or of assistance in the preparation of his defense" standard, *id.* ¶ 29, absent a threshold showing of some evidence of discriminatory effect and discriminatory intent.

¶ 17. Wesco's argument ignores the constitutional and common law reasoning of *Armstrong.* In addition to deciding that Federal Rule 16(a)(1)(C) does not entitle defendants to discovery in selective prosecution cases, *Armstrong* determined that judicial deference to prosecutorial discretion warranted the threshold showing requirement. 517 U.S. at 465. Selective prosecution was not at issue in *Simoneau,* and nothing in that case limits us from requiring a threshold showing in selective prosecution cases. Wesco is still required to demonstrate that the discovery sought may be material or relevant to its claim of selective prosecution; in order to do so, a threshold showing of some evidence of each element is required. Otherwise, compliance with the discovery request would likely be

"unreasonable or oppressive" within the meaning of Vermont Rule of Criminal Procedure 17(c).

■ ¶ 18. We adopt the threshold showing of "some evidence" of each element to access discovery in selective prosecution claims because the government of the State of Vermont is a government of balanced powers, Vt. Const. Ch. II, § 5, and prosecutorial power resides with the executive, *id.* § 20. We have recognized before the limited nature of judicial oversight into the discretion of the prosecutor. See *State v. Sauve*, 164 Vt. 134, 140, 666 A.2d 1164, 1167 (1995) (in light of separation-of-powers considerations, trial court's discretion to dismiss prosecutions in interest of justice and against wishes of prosecutor is necessarily limited to "rare and unusual cases when compelling circumstances require such a result to assure fundamental fairness in the administration of justice"); *State's Att'y*, 138 Vt. at 13, 409 A.2d at 601 (prosecutor granted broad discretion in deciding whether to initiate prosecution). Counterbalanced against separation-of-the-branches considerations, of course, weighs the right of citizens not to be targeted for prosecution in an unconstitutional manner; the prosecutorial function is equally subject to constitutional constraints. We agree with the reasoning in *Armstrong*, however, that the burdens on the government are substantially the same when responding to a motion to dismiss as when responding to the merits of the claim. To impose a standard lesser than that of *Armstrong* could — for claims entirely without merit — delay criminal proceedings, chill law enforcement, and undermine prosecutorial effectiveness. *Armstrong*, 517 U.S. at 465. An initial showing is necessary in order to parse out potentially meritorious claims from attempts to thwart efficient prosecution of alleged crimes.

■ ¶ 19. Finally, Wesco argues that even if we reverse the trial court's decision to disregard *Armstrong*, we should uphold the trial court on other grounds because Wesco is entitled to the documents, under *Simoneau*, as impeachment evidence. The State, in turn, characterizes Wesco's impeachment evidence theory "as an attempt to circumvent selective prosecution burdens and to pursue discovery by fishing expedition" and asks us not to consider this argument because, while the trial court entertained the impeachment theory, it decided the issue solely on selective prosecution grounds. We may of course affirm a trial court's decision on a different legal theory if the record evidence supports that theory, *Amy's Enters. v. Sorrell*, 174 Vt. 623, 625, 817 A.2d 612, 618 (2002) (mem.), but decline to do so

here. We note that this is a rare interlocutory appeal concerning discovery issues, which are more properly decided at the trial court level. *Wesco*, 2004 VT 102, ¶ 18 ("[D]iscovery rulings are inherently fluid because they fall within the trial court's discretion to revisit and alter as the litigation unfolds."). We reverse the trial court's decision to allow the discovery on selective prosecution grounds absent a threshold showing, and remand to the trial court to consider, under all legal theories advanced by defendant and consistent with this opinion, whether Wesco is entitled to the discovery it seeks.[4]

## II.

¶ 20. The State also argues that the trial court abused its discretion in authorizing depositions of the AGO and ANR computer systems administrators. First, the State argues that the trial court erred in authorizing depositions to cover the Hilltop investigation as well as the Winooski Exxon investigation, because authorizing discovery into the Hilltop investigation implicates selective prosecution issues and requires a threshold showing. Consistent with our analysis above, we agree that to the extent that Wesco seeks to depose the systems administrators concerning the Hilltop investigation in order to support its selective prosecution claim, the trial court must first conduct an *Armstrong* analysis.

¶ 21. Apart from selective prosecution concerns, the State next contends that the trial court abused its discretion in ordering the depositions of the computer systems administrators at all. Wesco argues that the emails the State produced referenced other, relevant emails that were missing, and that it learned through depositions

---

[4] In a footnote, Wesco also argues that the trial court "in essence" has already ruled that Wesco has made a prima facie case of selective prosecution by commenting in its October 2004 order that Wesco filed a "substantial" motion to dismiss and that it "demonstrated a relevance and need for the discovery to support the dismissal motion." The State vigorously opposes Wesco's claim, and we are likewise unconvinced because the trial court was evaluating Wesco's showing in light of *Simoneau* at the time, rather than *Armstrong*.

Wesco also attempts to argue that the trial court actually ruled from the bench prior to issuing the May 19 order when it, as characterized by Wesco, "found that [Wesco] had presented sufficient evidence of the relevance of and the need for discovery to support their selective prosecution defense, and agreed that the documents sought were also relevant to issues of bias and credibility, the trial court found that the State had failed to meet its burden to show that [Wesco's] discovery requests were unreasonable or oppressive." This argument is meritless. At that hearing, the court specifically said, "I'm not ruling."

that some State employees had deleted emails. Wesco wants to depose the systems administrators to determine whether those emails could be recovered, and if so, what would be involved in searching for them. The parties had initially agreed that the State would provide written detailed information about its computer system as an alternative to depositions. Apparently dissatisfied with that production, Wesco sought the depositions. In its April 2003 order, the trial court denied Wesco's motion to compel the depositions as unreasonable and oppressive. In October 2004, the trial court reversed itself as a result of *Simoneau*, and after a hearing on whether the request was unreasonable and oppressive, ordered the depositions "to determine the extent to which emails relating to the investigations ... can be recovered from the State's computer systems." The court did not require Wesco to explain why the written materials provided by the State were unsatisfactory and what additional information it sought to obtain. Nor did the court require Wesco to provide any evidence to support its assertion that the alleged emails once existed.

¶ 22. The State charges that the court relied only on Wesco's speculation, and that it should have required Wesco to present a threshold evidentiary showing that the emails had once existed. The State also argues that the court failed to address the State's previous production of written information concerning the computer systems. Finally, the State argues that the trial court failed to consider whether Wesco's discovery request was reasonable and not oppressive.

¶ 23. We review for an abuse of discretion, and will not disturb discovery rulings unless that discretion has been abused or withheld entirely. *Schmitt v. Lalancette*, 2003 VT 24, ¶ 9. Wesco need not show that depositions would yield admissible evidence but only testimony that might be material or relevant. *Simoneau*, 2003 VT 83, ¶ 29. We hold that the trial court abused its discretion.

¶ 24. First, the trial court's order relies only on Wesco's argument and speculation, and not on any evidentiary showing that certain emails once existed but are now missing. Although Wesco argued repeatedly that certain emails are missing and that it possesses evidence to prove its allegation, it failed to provide any factual showing to the trial court despite many opportunities to do so. Absent such a factual predicate, Wesco makes no showing that depositions to determine whether, how, and at what cost email could be recovered may lead to relevant or material evidence. Even if the

depositions revealed that email could be recovered easily at little cost, in order to proceed Wesco would still need to return to court to make a showing that the missing emails once existed. The trial court admitted as much when it commented, "I don't know how much of this is going to turn out to be theoretical." Wesco argues, and we acknowledge, that the trial court did not authorize a blanket search of the State's computer system but instead granted limited depositions. We agree with the State, however, that the limitation does not erase the need for the first step of a factual predicate.

¶ 25. Moreover, the parties had already embarked on a path of written discovery, and the trial court gave no explanation for departing from that path. The State had previously provided Wesco with written materials in the hope of satisfying Wesco's demand, but upon receipt, Wesco simply went forward with its deposition request. The court granted Wesco's motion without first requiring Wesco to explain why the written material fell short and what additional information Wesco sought to obtain. In light of these factors, we hold that the trial court abused its discretion in allowing the depositions to go forward.

*Reversed and remanded.*