2014 VT 111

## David Shaddy v. State of Vermont Office of Professional Regulation

[112 A.3d 718]

No. 13-303

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**[1]

Opinion Filed September 19, 2014

Motion to Vacate Denied October 20, 2014

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision.

*Gabriel M. Gilman,* Montpelier, for Appellant.

*David Shaddy,* Pro Se, Kyburz, California, Appellee.

¶ 1. ▇ **Dooley, J.** This is an interlocutory appeal from a decision of the superior court, on appeal from a decision of an appellate officer, remanding this disciplinary case to the Board of Nursing to determine whether the Board intends that the case be continued. The central question is whether an attorney for the Office of Professional Regulation (OPR) within the office of the Vermont Secretary of State has the power to appeal from a Board of Nursing decision vacating an earlier consent order suspending from practice appellee, David Shaddy. We conclude that the attorney had this power and reinstate the decision of the appellate officer.

¶ 2. The underlying controversy resulted from a charge by Brattleboro Retreat, an in-patient mental health facility, that while working there as a nurse, Mr. Shaddy improperly took into his possession certain narcotic drugs. The charge and its consequences have been the subject of two earlier reported decisions from this Court. *Shaddy v. Brattleboro Retreat,* 2012 VT 67, 192 Vt. 215, 57 A.3d 700; *Shaddy v. Dep't of Labor,* 2009 VT 103, 186 Vt. 633, 987 A.2d 311 (mem.). This case started with a report from Brattleboro Retreat to the Board, stating its determination that Mr. Shaddy diverted the narcotics. In response, the Board director referred the case to an OPR attorney to bring a summary suspension proceeding and created an investigation team consisting of the OPR attorney, the Board director, and a Board member. The OPR attorney filed a charging document in the name of the State of Vermont alleging unprofessional conduct based on the violation of four statutes and sought, and obtained, a summary suspension of Mr. Shaddy's license to practice nursing.

¶ 3. The process at this point in the case was conducted pursuant to 3 V.S.A. § 129(c), which provides:

> A board may assign one or more members of the board to investigate complaints and license applications. These members shall have the assistance of an investi-

gator for the Office and an attorney assigned by the Office of Professional Regulation who shall be responsible for prosecuting disciplinary and licensing cases before the board.

According to 3 V.S.A. § 123(a), the function of OPR is to "provide administrative, secretarial, financial, investigatory, inspection, and legal services to the boards."

¶ 4. The OPR attorney and Mr. Shaddy, then represented by counsel, reached a consent order in February of 2011, and it was approved by the Board in April 2011. The consent order states that it is not an admission of liability by Mr. Shaddy but he does not dispute that the State could prove its charges by a preponderance of the evidence. The consent order continued Mr. Shaddy's suspension and set the conditions for reinstatement of his license. Just over a year later, in April 2012, Mr. Shaddy, without counsel, sent the Board a letter seeking that the Board vacate or amend the stipulated order because he did not commit the unprofessional conduct alleged and he signed the stipulation under duress from his attorneys who threatened to cease representing him if he did not sign. He included with the letter a packet of supporting materials. The OPR lawyer filed an objection to Mr. Shaddy's request for relief. The Board held a hearing, presided over by a different OPR lawyer,[2] at which Mr. Shaddy was the only witness. Relying upon V.R.C.P. 60(b)(6), the Board granted Mr. Shaddy most of the relief he requested, finding his testimony was "well organized and credible," that he showed "a good reason for his request for relief," that he sought relief "within a reasonable time," that his claims were "supported by the documentation he provided at the hearing," that "the evidence against Mr. Shaddy is insufficient," that "there has been a miscarriage of justice," and that the facts demonstrated an extraordinary situation "that warrant[s] the reopening of final judgment." The Board vacated the consent order and suspension and dismissed the charges against Mr. Shaddy without prejudice to bring them again.

---

[2] The facts do not show the internal organization of OPR. The OPR lawyer who appeared as the prosecutor was the same lawyer who filed the charges against Mr. Shaddy. He has been replaced by the lawyer who appears for OPR here and identifies himself as "State Prosecuting Attorney." The OPR lawyer who presided at the hearing of the Board of Nursing is identified as "Presiding Officer."

¶ 5. The OPR attorney appealed the Board decision, on behalf of the State, pursuant to 3 V.S.A. § 130a(a). Under the statute, the Director of OPR assigns the appeal to an appellate officer, who conducts an on-the-record review without taking new evidence. *Id.* Generally, the appellate officer is bound by the fact-finding of the Board and can overturn the Board decision only "if substantial rights of the appellant have been prejudiced" for any of seven listed reasons. *Id.* § 130a(b). In this case, the appellate officer reversed[3] the Board of Nursing decision for multiple reasons: (1) the Board should not have considered evidence related to the merits of the disciplinary charges, (2) the Board improperly failed to find grounds to vacate the earlier judgment, (3) the facts and circumstances did not meet the standard of Rule 60(b)(6), (4) the Board made no findings of fact, and (5) the Board improperly deprived the State of the opportunity to offer evidence. Mr. Shaddy then appealed the appellate officer's decision to the superior court, raising one relevant argument: the OPR attorney had no power to appeal the Board of Nursing decision, and, as a result, the appellate officer decision has to be struck.

¶ 6. In an extensive decision, the superior court ruled that the power to prosecute a disciplinary complaint is vested in the Board and not in OPR. Thus, it ruled that if the Board's decision was intended to exercise its power of prosecution by withdrawing the disciplinary complaint, its decision was final and could not be appealed by the OPR attorney. It reached this conclusion despite its conclusion that "the appellate officer explained in detail that the Board's Rule 60 proceeding and decision were egregiously flawed and the court agrees." The court's order remanded the case to the Board of Nursing "for clarification whether its Rule 60 decision represents a determination that the original decision *to prosecute* Mr. Shaddy has been replaced by a decision *not to prosecute* Mr. Shaddy and any further proceedings consistent with this decision." On the request of the OPR attorney, the court granted an interlocutory appeal to this Court.

¶ 7. ■ Although this appeal ostensibly involves one issue, there are actually two issues: (1) whether the State could appeal the

---

[3] The appellate officer reversed the Board decision, without a remand, but added "with the recommendation that if any further proceedings occur in this matter before the Vermont Nursing Board, then the case should be assigned to an independent hearing officer appointed by the Vermont Nursing Board pursuant to 3 V.S.A. § 129(f)."

decision of the Board of Nursing pursuant to 3 V.S.A. § 130a(a); and (2) whether the OPR attorney acts for the State in filing and pursuing the appeal. The State argues that the first issue is determined by our decision in *In re Lakatos*, 2007 VT 114, 182 Vt. 487, 939 A.2d 510. *Lakatos* was also a disciplinary action, albeit for a different profession, and the professional argued that the State could not appeal an adverse decision of the superior court to this Court. We answered:

> Respondent has moved to dismiss the appeal on the ground that the State is not a party that may appeal the superior court's ruling. The assertion is unpersuasive. The statutory scheme governing appeals from professional boards such as the Board of Dental Examiners provides that a "party aggrieved" by a final decision of a board may appeal to the director and have the matter heard by an appellate officer. 3 V.S.A. § 130a. Thereafter, a "party aggrieved" by the decision of the appellate officer may appeal to the superior court. *Id.* The State, as the prosecuting agency, was plainly a party to the proceedings and as such would have been entitled to pursue an administrative appeal and an appeal to the superior court, and was further entitled to appeal from an adverse ruling by the superior court to this Court.

*Id.* ¶ 5 n.6 (citing *Office of Prof'l Regulation v. McElroy*, 2003 VT 31, ¶ 1, 175 Vt. 507, 824 A.2d 567 (mem.); *In re Smith*, 169 Vt. 162, 164, 730 A.2d 605, 607 (1999)). We agree with the State's position.

¶ 8. ■ We do not accept the rationale of the superior court that the charging decision resides in the Board, and the Board could simply drop the charges for any or no reason. The statute describes the role of the OPR attorneys as "prosecuting disciplinary and licensing cases." 3 V.S.A. § 129(c). Even though disciplinary cases are not criminal cases, we view the designation of the OPR lawyer as a prosecutor as significant. "Because prosecutors function as delegates of the executive, they retain broad discretion to enforce the law including — so long as probable cause is present — the decisions whether to prosecute in any given case and what charge to file." *State v. Wesco, Inc.*, 2006 VT 93, ¶ 11, 180 Vt. 345, 911 A.2d 281. As we noted in *State's Attorney v. Attorney General*, "the legislature has often exercised its power to

provide for the commencement of prosecutions by officers other than State's Attorneys." 138 Vt. 10, 13, 409 A.2d 599, 601 (1979). The trial court's interpretation of the Board's power deprives the prosecuting officer of the most important power — to determine what charges to file, if any. We cannot conclude that this interpretation is consistent with the statute.

¶ 9. Our conclusion is consistent with the procedure followed in this case as well as the applicable rules defining the procedure in disciplinary cases. In this case, the Board followed the investigatory team procedure outlined in § 129(c). Thus, there is nothing in the record to indicate that the Board of Nursing had any role in the charging decision in this case. Indeed, the statute provides that a Board member involved in an investigation "shall not sit in adjudication of the case and shall not participate in ex parte communications with other board members regarding the case." 3 V.S.A. § 129(c). Exactly how the charging decision was made is unclear, but it came from either the designated OPR attorney or the investigatory team as a whole, not the Board.

¶ 10. ■ The procedure should be viewed in the context of the rules governing disciplinary cases. By statute, the Board is authorized to adopt procedural rules governing disciplinary cases. 3 V.S.A. § 129(a)(1). The Board of Nursing has adopted the procedures compiled by OPR, called Administrative Rules of Practice. Vermont Board of Nursing, Administrative Rules, § 11.3 (June 23, 2011), https://www.sec.state.vt.us/media/540194/Nursing-Rules-2011-0623.pdf. The OPR rules define a case as initiated "by filing a complaint, specification of charges, petition or other application with the Docket Clerk" at OPR. Office of Professional Regulation, Administrative Rules of Practice Rule 3.2 (Feb. 1, 1999), https://www.sec.state.vt.us/media/477012/OPR-Rules-for-Web-April-2014.htm. There is no indication in these rules of procedure that the "hearing authority," the term for the applicable Board, has any role in case initiation.

¶ 11. This brings us to the second issue — whether an attorney for the Office of Professional Regulation has the power to appeal on behalf of the State. Although a lawyer in the Secretary of State's office appeared for the State and presumably filed the notice of appeal for the State, the decision did not address whether the lawyer had that power.

¶ 12. OPR was created within the Secretary of State's office by legislation in 1990. 1989, No. 250 (Adj. Sess.), § 1 (creating 3

V.S.A. § 122). Although the office provided "administrative, secretarial, financial, investigatory, inspection, and legal services" to the professional licensing boards on request, *id.* (codified at 3 V.S.A. § 123(a)), this legislation did not change the Attorney General's role in prosecuting disciplinary cases before the boards. Thus, the boards had the obligation to investigate complaints of unauthorized practice of the profession, but the product of the investigation was a report to the Attorney General, 3 V.S.A. § 127(a), who could bring an injunction request to the court. *Id.* § 127(b). Complaints of unprofessional conduct were to be "forwarded to the Attorney General." *Id.* § 129(a). Section 129(c) provided, as it does today, that a board could assign one or more of its members to investigate complaints and that "[t]hese members shall have the assistance of an investigator for the office and the Attorney General who shall be responsible for prosecuting cases before the board."

¶ 13. In two statutes in 1996, the Legislature deleted the obligation of the boards to send a report on an unauthorized practice complaint to the Attorney General as contained in § 127(a) and to forward complaints of unprofessional conduct to the Attorney General as contained in § 127(b). 1995, No. 138 (Adj. Sess.), § 12; 1995 No. 171 (Adj. Sess.), §§ 8, 9.

¶ 14. Finally, in 2003, the Legislature removed the Attorney General from the investigation process in § 129(c) and substituted "an attorney assigned by the office of professional regulation." 2003, No. 66, § 85 (amending 3 V.S.A. § 129(c)). At the same time, the Legislature amended § 129(b) to give an OPR attorney the power to seek an injunction against unauthorized practice from the court or a civil penalty of $1000 or less from the appropriate board. *Id.* § 84. The 2003 act that accomplished these modifications was the appropriations act. In the same act, the Legislature enacted a section entitled "ONE-TIME APPROPRIATION; PROFESSIONAL LICENSING UNIT TRANSFER," which provided: "(a) In order to facilitate the transfer of the professional licensing unit from the office of the attorney general to the secretary of state, $25,000.00 in general funds is appropriated to the attorney general on a one-time basis." *Id.* § 57b.

¶ 15. ▮ One statutory section, unmodified since adopted in 1997, is important to our understanding of the actions of the Legislature. 3 V.S.A. § 129a(c) provides that the "burden of proof

in a disciplinary action shall be on the State to show by a preponderance of the evidence that the person has engaged in unprofessional conduct." This is a legislative recognition that a disciplinary proceeding is prosecuted by the State of Vermont.

¶ 16. ■ ■ When construing a statute, "our primary goal is to give effect to the Legislature's intent." *Lydy v. Trustaff, Inc./ Wausau Ins. Co.*, 2013 VT 44, ¶ 6, 194 Vt. 165, 76 A.3d 150. We recognize that the Legislature could have been more explicit in defining the role in disciplinary cases that it assigned to OPR and its attorneys. We are satisfied, however, that the Legislature intended in its 2003 enactments that OPR attorneys assume the role formerly played by the Attorney General and represent the State of Vermont in such proceedings to discharge the burden imposed by 3 V.S.A. § 129a(c). We construe the statutes in Title 3, chapter 5, subchapter 3, with respect to professional regulation and OPR, to embody this power. Thus, OPR attorneys represent the State of Vermont and may exercise the State's power to appeal from an adverse decision of a board pursuant to 3 V.S.A. § 130a(a).

*The judgment of the superior court is reversed. The judgment of the appellate officer is reinstated.*