*Howard Center v. Office of Prof. Reg.*, No. 66-2-20 Wncv (Tomasi, J., Apr. 21, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 66-2-20 Wncv |

| | |
|---|---|
| Howard Center, Inc.,<br> Plaintiff<br><br> v.<br><br>Office of Professional Regulation,<br> Defendant | |

### Opinion and Order on Motion to Quash

This is a dispute over access by Defendant Vermont Office of Professional Regulation ("OPR") to specific patient records possessed by their custodian Plaintiff Howard Center, Inc.  OPR seeks these records as part of its investigation into the conduct of a specific licensed nurse practitioner subject to its professional supervision.  Howard Center reported to OPR the termination of the nurse's employment and some documentation regarding the underlying misconduct that led to the termination.  *See* 3 V.S.A. § 128 (disciplinary action to be reported to OPR).  In response, OPR initiated an investigation, including seeking additional documents from Howard Center by subpoena.  Howard Center cooperated with the investigation and subpoena, in part, but refused to produce requested patient records, claiming that they are strictly confidential and privileged.  OPR later issued a second such subpoena seeking patient records, which prompted Howard

Center to file the motion to quash under consideration here pursuant to 3 V.S.A. § 809b.

Howard Center argues that the disputed patient records are privileged and confidential under Vermont's patient's privilege, 12 V.S.A. § 1612 and Vt. R. Evid. 503; the relevant provision of the Bill of Rights for Hospital Patients, 18 V.S.A. § 1852(a)(7); and 18 V.S.A. § 7103(a). The State argues that Howard Center is not a proper party to assert the patient's privilege, that the records are available pursuant to 3 V.S.A. § 129a(a)(16), and that the other provisions cited by Howard Center do not apply.[1]

In the Court's view, two provisions of the OPR statutes, 3 V.S.A. §§ 128, 129a(a)(16), are the proper and most specific lens through which to analyze Howard Center's claim of privilege. Of all the provisions cited by the parties, those sections most specifically address the access issue presented by this case. Section 128 demands that a custodian of patient records, such as Howard Center, shall make a report to the appropriate OPR Board of disciplinary action taken against a licensee. It shall also provide the Board with "supporting information and evidence" relating to such action. *Id*. Section 129a(a)(16) expressly provides an exception to the patient's privilege in the specific circumstance of OPR investigations.

As to Howard Center's citations to Title 18, it is not clear that the patient privacy provisions at 18 V.S.A. §§ 1852(a)(7), 7103(a) apply in the circumstances of

---

[1] There is no dispute that HIPAA's Privacy Rule does not apply in the circumstances of this case. *See* 45 C.F.R. 164.512(d)(1).

2

this case or to OPR investigations at all. In any event, if OPR is entitled to access pursuant to the more specific provisions of Title 3, that would supersede any potentially contrary outcome under the more general Title 18 provisions. *See Town of Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90, 94 ("We apply the long-standing rule of statutory construction that where two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute controls."). Accordingly, the Court focuses on the patient's privilege and 3 V.S.A. §§ 128, 129a(a)(16).

Vermont's patient's privilege appears in statute at 12 V.S.A. § 1612 and is further described at Vt. R. Evid. 503.[2] The rule of privilege, in relevant part, is: "A patient has a privilege to refuse to disclose and to prevent any other person, including a person present to further the interest of the patient in the consultation, examination or interview, from disclosing confidential communications made for the purpose of diagnosis or treatment." Vt. R. Evid. 503(b). While the privilege belongs exclusively to the patient, "[t]he person who was the physician, dentist, nurse, or mental health professional at the time of the communication is presumed to have

---

[2] While Rule 503 elaborates on the patient's privilege, it neither contradicts 12 V.S.A. § 1612 nor alters substantive rights. *See* Reporter's Notes, Vt. R. Evid. 101 ("[I]n the most critical area, privilege, the rules follow the principles of existing law."); Reporter's Notes—1985 Amendment, Vt. R. Evid. 501 ("Privileges created by statute continue to be effective except where these rules provide a similar or identical privilege."); Reporter's Notes, Vt. R. Evid. 501 ("The rules create no new privileges. Rules 502 through 505 and 509 are carefully drawn to follow existing Vermont statutory and case law as amplified and clarified by consistent provisions of the Uniform Rules."); Reporter's Notes, Vt. R. Evid. 503 ("The form of the rule is different from that of the 1974 statute but there is no change of substance."); *see also* 12 V.S.A. § 1.

authority to claim the privilege but only on behalf of the patient." Vt. R. Evid. 503(c).

The State argues that Howard Center cannot invoke the patient's privilege because only the specific provider named in Vt. R. Evid. 503(c)—the specific treating "physician, dentist, nurse, or mental health professional"—can do so. Howard Center disputes that interpretation of Rule 503(c). As noted below, however, Howard Center also makes a parallel argument to that of the State in connection with 3 V.S.A. § 129a(a)(16)(B)—*i.e.,* that it may apply to the specific licensee but not to the institution where the licensee works, regardless that the institution, not the licensee, is the custodian of the underlying patient records.

That the patient privilege is intended to protect *the patient* exclusively cannot be gainsaid.

> [T]he patient alone during his or her lifetime has the right to claim or to waive the privilege. If the patient is in a position to claim it and does not, it is waived and no one else may assert it. If the patient is not present, is unaware of the situation, or for some other reason is unable to claim the privilege, it is generally held that the privilege may be asserted on his or her behalf by a guardian, personal representative, or the health care provider, the latter being frequently held to have an enforceable duty to invoke the privilege in the absence of waiver by the patient. This necessary rule has unfortunately demonstrated considerable potential for allowing health care providers to advance personal interests under the guise of vindicating the privilege.

1 Kenneth S. Broun *et al., McCormick On Evid.* § 102 (8th ed.) (footnotes omitted). Accordingly, Vt. R. Evid. 503(c) is not properly read to give the provider any special right to claim the privilege for his own benefit. Rule 503(c) reflects the *presumption*

that the provider who asserts the patient's privilege does so solely on behalf the patient.

The language of Rule 503(c) does not expressly preclude someone other than the specific provider from invoking the privilege on the patient's behalf when the patient is not able to do so. It is, thus, not surprising that the Vermont Supreme Court, addressing an invocation-of-privilege issue in *Assur v. Central Vermont Hospital*, No. 2007–309, 2008 WL 2811199, \*4 (March 2008) (unpub. mem.), summarily stated without citation to authority: "[I]t is of no moment that CVH [Central Vermont Hospital] is claiming that the materials are privileged rather than having the patients claim the privilege themselves." It is clear in the context of the decision that CVH was the health care facility where the patient records originated and where they remained, and no one else with the interest or duty to claim the privilege on the patient's behalf was present to do so. In those circumstances, CVH could be presumed to have authority to invoke the privilege on the patient's behalf just as the patient's doctor, if present, would have been able to do so. The same is true here. Howard Center can be presumed to have authority to invoke the privilege on the patient's behalf concerning the medical records of which it is custodian. The Court rejects the State's contrary construction.

The question then becomes whether Vermont statutes create a waiver of that privilege in this context. The Court concludes that they do. Among OPR's chief duties are inspection, investigation, and the charging and prosecution of professional misconduct. *See* 3 V.S.A. § 123(a); *Shaddy v. State Off. of Prof. Reg.*,

5

2014 VT 111, ¶ 8, 197 Vt. 625, 630.  To facilitate those responsibilities, any "health

care institution in which a licensee performs professional services shall report to the

Office, *along with supporting information and evidence*, any disciplinary action

taken by it or its staff that limits or conditions the licensee's privilege to practice or

leads to suspension or expulsion from the institution."  3 V.S.A. § 128(a) (emphasis

added).  The plain language of § 128 includes no exemption from such "supporting

information and evidence" for relevant patient records that otherwise would be

subject to a claim of privilege.  Reading into § 128 such an exemption that otherwise

is not there would serve no legitimate purpose and would be directly counter to the

intention of the statute.  Section 128(a) clearly is intended to facilitate OPR's

investigatory duties with regard to licensed professionals—its mandate is not to

investigate patients.  Its focus is to protect the public, including those same

patients.  The language of the law expressly provides for the production of records

relating to professional discipline and, in this context, those records plainly would

include patient records.  The law, thus, provides for the production of patient

records to OPR in connection with certain investigations and is a limited waiver of

the patient's privilege.  12 V.S.A. § 1612(a).[3]

If that conclusion were in doubt, it is buttressed by a related provision

concerning the patient privilege set out just two sections later:

---

[3] Nor are the records supplied to OPR simply available to the public.  The
Legislature continued protections for such records by specifically including
confidentiality restrictions with regard to the production of records under §§ 128
and 129a(a)(16) in 3 V.S.A. §§ 128(c), 131.

(A) Impeding an investigation under this chapter or unreasonably failing to reply, cooperate, or produce lawfully requested records in relation to such investigation.

 (B) The patient privilege set forth in 12 V.S.A. § 1612 shall not bar the licensee's obligations under this subsection (a) and a confidentiality agreement entered into in concluding a settlement of a civil claim shall not exempt the licensee from fulfilling his or her obligations under this subdivision (16).

3 V.S.A. § 129a(a)(16).

Howard Center interprets these provisions narrowly. It sees these statutes, in essence, as providing a statutory waiver of the privilege *applicable to the licensee alone*, under subsection (B), to ensure compliance with the duty to not impede an investigation under subsection (A). It infers that, while these provisions may prevent the licensee from invoking patient privilege, they preserve Howard Center's right to do so.

Interpreting § 129a(a)(16)(B) *in pari materia* with § 128 and in the context of privilege law generally, it becomes clear that the distinction urged by Howard Center makes no sense. *See State v. DeLaBruere*, 154 Vt. 237, 271 (1990) ("[W]e must construe statutes relating to the same subject matter *in pari materia*."); 2B Norman Singer and Shambie Singer, *Sutherland Statutory Construction* § 51:2 (7th ed.) ("In the absence of any express repeal or amendment, the new provision is presumed to accord with the legislative policy embodied in those prior statutes, and they all should be construed together." (footnote omitted)).

Howard Center's cramped interpretation of these provisions improperly places the focus on the identity of the third party who might invoke the privilege for

7

the benefit of the patient rather than on the disposition of the privilege itself under the circumstances. The upshot of its interpretation—that the privilege stands between OPR and it, while the privilege disappears between OPR and a licensee under investigation—is out of step with privilege law generally and with 3 V.S.A. §§ 128 and 129a(a)(16) in particular. The privilege protects the patient only, not the party attempting to assert the privilege.

Indeed, a licensee often will not be the "custodian" of relevant medical records under § 129a(a)(16). Instead, as anticipated by § 128, hospitals and providers like Howard Center are more likely to be able to provide such records and, in this context, are required by law to produce them. If § 129a(a)(16) were interpreted as creating the *exclusive* waiver of privilege for patient records in this context, and it was limited to requests to the licensee for production, as Howard Center urges, it often would be a largely ineffectual provision. "[T]here is a presumption that the Legislature does not intend to enact meaningless legislation . . . [and], thus, when we construe a statute, we must do so in a manner that will not render it ineffective or meaningless." *Chittenden v. Waterbury Ctr. Community Church, Inc.,* 168 Vt. 478, 491 (1998) (quoting *State v. Yorkey*, 163 Vt. 355, 358 (1995) (citations omitted)).

The reasonable interpretation of § 129a(a)(16) is that any effort by the licensee to use the patient privilege to impede OPR's investigatory undertakings itself is unprofessional conduct. Subsection 129a(a)(16) does not validate Howard Center's ability to invoke patient privilege in this case. Instead, it confirms that patient privilege is properly waived by operation of 3 V.S.A. § 128(a) and any effort

8

by the licensee to undermine that waiver and impede OPR's investigation is unprofessional conduct.

To the extent that Howard Center argues that a 2005 decision of this Court, *In re Subpoena Pertaining to Nurse W.*, No. 634-10-05 Wncv (Vt. Super. Ct. Nov. 1, 2005), counsels in favor of a different interpretation of 3 V.S.A. §§ 128(a), 129a(A)(16), the Court respectfully disagrees with any contrary analysis in that decision, which is not precedential in any event. Additionally, 3 V.S.A. § 129a(a)(16) is important to this Court's analysis. That provision was first adopted by the Legislature in 2017 and had no relevant precursor that could have been analyzed in 2005. 2017, No. 48, § 4. As a result, the *Nurse W.* court simply did not consider that provision or its impact on its interpretation of § 128.

The Court also notes that, while the *Nurse W.* court did not enforce the OPR subpoena for unredacted records at issue in that case, it so ruled with the stated expectation that the hospital would produce the records in redacted form. *Nurse W.*, slip op. at 4 n.1. In this case, Howard Center is attempting to use the patient privilege to avoid production altogether.[4]

---

[4] Though Howard Center is not entitled to have OPR's subpoena quashed, in the interest of preserving patient privacy to the extent reasonably possible, the Court expects OPR to consider whether its legitimate investigatory purposes can reasonably be served with documents produced with patient-identifying information redacted, and for the parties to communicate on this issue prior to Howard Center's compliance with the subpoena.

9

<u>Conclusion</u>

For the foregoing reasons, Howard Center's motion to quash is denied.

Dated this __ day of April 2020 at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Judge

10